**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| JIA CHUNG and KEVIN STERK, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 1:11-cv-01729 |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Honorable Matthew F. Kennelly |
| REDBOX AUTOMATED RETAIL, LLC, | ) ) | Magistrate Judge Jeffrey T. Gilbert |
| Defendant. | ) ) |  |

**DEFENDANT REDBOX AUTOMATED RETAIL, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
<u>DISCLOSURE CLAIMS CONTAINED IN AMENDED CONSOLIDATED COMPLAINT</u>**

Dated: July 28, 2011

Donna J. Vobornik (ARDC #6195767)
Natalie J. Spears (ARDC #6230320)
Anthony T. Eliseuson (ARDC #6277427)
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@snrdenton.com
natalie.spears@snrdenton.com
anthony.eliseuson@snrdenton.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

## **INTRODUCTION**

Plaintiffs Jia Chung[1] and Kevin Sterk ("Plaintiffs") have filed an Amended Consolidated Complaint that asserts, for the first time, that Defendant Redbox Automated Retail, LLC ("Redbox") is in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA") because it supposedly *discloses* Plaintiffs' personally identifiable information ("PII") as defined by the VPPA. Plaintiffs' allegations, however, do not include *any* factual support, and therefore fail the pleading requirements of the federal rules as set forth in *Twombley* and *Iqbal*. Plaintiffs' Amended Complaint does not explain who the PII was supposedly disclosed to, when it was supposedly disclosed, or any other allegations that would indicate that Plaintiffs have any actual basis for asserting these putative claims. The reason such facts are not alleged is simple: there is *no* basis for asserting any improper disclosure of PII occurred, and Plaintiffs simply added these new (and baseless) claims in an attempt to avoid complete dismissal given the law and authorities presented in Redbox's motion to dismiss the previously asserted "retention" claims.

Indeed, Plaintiffs' Amended Consolidated Complaint also contains new allegations that affirmatively demonstrate that, at best, their new disclosure claims are based on an objectively unreasonable misunderstanding of the VPPA. Plaintiffs seem to believe that any use of PII for marketing purposes somehow amounts to a prohibited "disclosure" under the VPPA. (Am. Compl. at ¶ 59 (alleging "customers' names, addresses, and rental subject matter *cannot even be used for marketing purposes* unless Redbox first provides the customer with the 'opportunity, in a clear and conspicuous manner, to prohibit such disclosure'") (emphasis added).) But Plaintiffs are simply wrong. The VPPA only prohibits certain disclosures of PII; it in no way prohibits the collection or internal use of PII at all. In fact, there are numerous legitimate marketing purposes that would use PII without involving *any* disclosure and many more legitimate marketing purposes using PII that would involve disclosures, but not disclosures of PII as defined by the VPPA. Because there was no disclosure of PII, however, none of these marketing functions would even

---

[1] Plaintiffs have referred to Ms. Chung as both "Jiah" and "Jia," although "Jia" appears more frequently in recent filings.

implicate the VPPA, much less violate it. Thus, it is apparent that Plaintiffs' new disclosure allegations not only are inadequately pled, but they also have no basis in fact or law, and should be dismissed.

## BACKGROUND

Redbox incorporates the background set forth in its prior memorandum of law in support of its motion to dismiss regarding its business and Plaintiffs' retention-based claims. (ECF No. 24 at 2-4.)[2] That motion was filed on June 9, 2011 pursuant to this Court's scheduling order for briefing that motion dated May 18, 2011 (ECF No. 22). On June 30, 2011, rather than responding to Redbox's motion, Plaintiffs filed an Amended Consolidated Complaint that substituted a new Plaintiff for Blake Boesky (who apparently has abandoned his claims against Redbox), and added the new disclosure claims, as well as a putative disclosure class. (ECF No. 27 at ¶¶ 7, 39, 44, 45, at 60 (new allegations regarding the disclosure claims).) The "meatiest" of Plaintiffs' disclosure allegations merely states:

> Additionally, Redbox disclosed Plaintiff Chung's "personally identifiable information" for marketing purposes without her informed, written consent, and without providing her a clear and conspicuous opportunity to prevent such disclosures.

(Am. Compl. at ¶ 39; *see also* ¶ 44 (same for Sterk).) Redbox is attaching hereto as Exhibit A, a redline comparing Plaintiffs' Consolidated Complaint with the Amended Consolidated Complaint, which shows the entirety of the new allegations.

## KEY PROVISIONS OF THE VPPA

The VPPA defines "personally identifiable information" or "PII" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The VPPA's disclosure provisions provide:

---

[2] This Court's July 6, 2011 Order set forth a briefing and motion schedule on Redbox's original motion to dismiss Plaintiffs' Consolidated Complaint and the new disclosure claims contained in Plaintiffs' Amended Consolidated Complaint. Redbox expressly incorporates its memorandum of law in support of its original motion to dismiss (ECF No. 24), which applies with full force to the retention portions of Plaintiffs' claims contained in their Consolidated Amended Complaint.

(b) Video tape rental and sale records.

 (1) A video tape service provider who knowingly discloses, to any person, *personally identifiable information concerning any consumer* of such provider shall be liable to the aggrieved person for the relief provided in subsection (d) [sic].

 (2) A video tape service provider *may disclose personally identifiable information concerning any consumer*--

 (A) to the consumer;

 (B) to any person with the informed, written consent of the consumer given at the time the disclosure is sought;

 (C) to a law enforcement agency pursuant to a warrant issued under the Federal Rules of Criminal Procedure, an equivalent State warrant, a grand jury subpoena, or a court order;

 (D) to any person if the disclosure is solely of the names and addresses of consumers and if--

 (i) the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure; and

 (ii) the disclosure does not identify the title, description, or subject matter of any video tapes or other audio visual material; however, the subject matter of such materials may be disclosed if the disclosure is for the exclusive use of marketing goods and services directly to the consumer;

 (E) to any person if the disclosure is incident to the ordinary course of business of the video tape service provider; or

 (F) pursuant to a court order, in a civil proceeding upon a showing of compelling need for the information that cannot be accommodated by any other means, if--

 (i) the consumer is given reasonable notice, by the person seeking the disclosure, of the court proceeding relevant to the issuance of the court order; and

 (ii) the consumer is afforded the opportunity to appear and contest the claim of the person seeking the disclosure.

 If an order is granted pursuant to subparagraph (C) or (F), the court shall impose appropriate safeguards against unauthorized disclosure.

18 U.S.C. § 2710(b)(1)-(2) (emphases added).

## ARGUMENT

## I. Plaintiffs' "Disclosure" Claims Fail To State A Claim For Violation Of The VPPA.

### A. The *Iqbal/Twombly* standards.

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th

Cir. 2007).  While a complaint "does not need detailed factual allegations," the Federal Rules do not "dispense[] with the pleading of facts altogether," and "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555, 555 n.3 (citations omitted).

"Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  *Id.*  If a complaint "mention[s] no specific time, place, or person involved in" the alleged wrongdoing, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin."  *Id.* at 565 n.10; *see also Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.").

The Supreme Court has expressly rejected the dictum that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 550 U.S. at 560-61 (quoting and abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  Instead, to withstand dismissal, a complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."  *Id.*; *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law.").

**B.      Plaintiffs' new disclosure allegations do not meet the *Iqbal/Twombly* standards.**

Here, Plaintiffs' disclosure allegations clearly flunk this standard.  Plaintiffs merely allege

- 4 -

that:

> Additionally, Redbox disclosed Plaintiff Chung's "personally identifiable information" for marketing purposes without her informed, written consent, and without providing her a clear and conspicuous opportunity to prevent such disclosures.

(Am. Compl. at ¶ 39; *see also* ¶ 44 (same for Sterk).)  Such conclusory allegations that, at most, merely list the legal boilerplate of the elements of a claim are just the type that the United States Supreme Court rejected in *Twombly* and *Iqbal*.  *Twombly*, 550 U.S. at 555, 555 n.3 ("[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."); *Iqbal*, 129 S. Ct. at 1949-50 (reiterating that courts should not accept a complaint that contains mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").  Plaintiffs fail to explain what specifically was disclosed, when it was disclosed, and most importantly to whom it was supposedly disclosed as required.[3]  *Twombly*, 550 U.S. at 565 n.10.

Here, the reason why Plaintiffs' Complaint contains none of the required allegations is obvious:  Plaintiffs and their counsel have no real reason to believe there was any disclosure.  A complaint filed by Plaintiffs taking a shot in the dark that wrongdoing may have occurred does not survive a motion to dismiss under *Twombly* and *Iqbal*.  *See, e.g,. Iqbal*, 129 S.Ct. at 1949-50 (stating to withstand dismissal, a complaint "must contain sufficient factual matter . . . to state a

---

[3] Plaintiffs' allegations do not even allege any supposed disclosure of PII was to a third-party.  (Am. Compl. at ¶¶ 39, 44.)  Thus, even under Plaintiffs' allegations, the supposed "disclosure" could have been to the Plaintiffs themselves, which is non-actionable as a matter of law.  18 U.S.C. § 2710(b)(2)(A) ("A video tape service provider may disclose personally identifiable information concerning any consumer--(A) to the consumer").  Indeed, as Redbox explained in its memorandum of law in support of its original motion to dismiss, Redbox's privacy policy expressly explains it collects information for marketing purposes, in particular in order "to **provide you** with promotional offers or information," and to "send marketing information **to you**, such as discount offers, information about new product offerings, etc."  (ECF No. 24-4 at 1 (emphases added).)  Such communications (even if they contained PII, and Redbox in no way suggests they do), would fall outside the scope of the VPPA by definition.  Similarly, the VPPA allows PII to be disclosed to "any person" if the disclosure is "incident to the ordinary course of business of the video tape service provider."  § 2710(b)(2)(E).  The VPPA contains several additional express exceptions to its prohibition on the disclosure of PII, including (1) based on informed and written consent of the consumer; (2) to law enforcement pursuant to a warrant; (3) for marketing purposes; and (4) pursuant to court order.  18 U.S.C. § 2710(b)(2)(A)-(F).

claim to relief that is plausible on its face," and plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"); *cf. Mite v. Falstaff Brewing Corp.*, No. 84 C 10443, 1985 U.S. Dist. LEXIS 17996 (N.D. Ill. July 11, 1985) ("The mandate not to shoot first and ask questions later has been codified in the 1983 amendment to [Rule 11].").

### C. Plaintiffs confuse the concepts of "marketing" and the concept of "disclosure" as used in the VPPA.

Dismissal is particularly warranted here because other allegations in Plaintiffs' Amended Consolidated Complaint demonstrate that Plaintiffs' disclosure allegations not only were filed without any factual basis, but also are based on Plaintiffs' confusion regarding the concept of "marketing" and the concept of "disclosure" under the VPPA. (*Compare* Am. Compl. at ¶ 59 (alleging "customers' names, addresses, and rental subject matter ***cannot even be used for marketing purposes*** unless Redbox first provides the customer with the 'opportunity, in a clear and conspicuous manner, to prohibit such disclosure'" (emphasis added) *with* 18 U.S.C. § 2710(b)(1) (precluding "disclosure" of "personally identifiable information" except as allowed by Section 2710(b)(2).) ***Nothing*** in the VPPA prevents video tape service providers from ***using*** PII for marketing purposes (or any other purpose) if there is no prohibited "disclosure" of "PII" as defined by the VPPA, and there are numerous such marketing purposes that such information could be used for that do not involve disclosure at all, much less a disclosure of PII.

For example,[4] a video tape service provider may analyze rentals by individuals and, drawing upon other data about them, determine what movies it should favor to target customers in particular markets. In the case of providers, like Redbox, that have fixed geographic rental locations, PII could be used to determine what and how many movies should be maintained in certain kiosks or where new kiosks should be placed. Again, this would be the use of PII for marketing purposes that does not involve any disclosure (and has no VPPA implications). There are numerous other examples of internal marketing analysis and metrics, many of which are

---

[4] The following are merely for illustrative purposes only and should not be read to suggest Redbox does or does not use PII for such purposes.

standard practice in numerous industries involving sales, that could use PII without any disclosure at all.

Similarly there are legitimate marketing purposes in which PII would be used internally, and that would result in a disclosure, but *not* disclosures of PII, and therefore, would also have no VPPA implications. For example, a video tape service provider that, unlike Redbox, offers other products and services, could use a customer's PII to determine other product solicitations and advertisements to send to the customer. A video tape service provider such as Redbox may also use PII to recommend other movies to a customer based on prior rentals. These providers then email or post on a customized website screen "recommendations" to that customer. This clearly involves the use of PII for marketing purposes, and involves a "disclosure," but it does *not* involve a disclosure of PII if the prior movies are not mentioned,[5] and therefore has no VPPA implications.

Thus, as demonstrated by these examples, the point is a simple one: there are numerous marketing uses for PII that involve no disclosure at all, and numerous more that would involve disclosure of other information but not PII. In none of these situations would Plaintiffs have a claim for a violation of the VPPA, and it is clear, at best, Plaintiffs' speculation about potential wrong doing falls into one of these categories of benign and perfectly VPPA-compliant marketing use of PII. (Am. Compl. at ¶ 59 (alleging "customers' names, addresses, and rental subject matter *cannot even be used for marketing purposes* unless Redbox first provides the customer with the 'opportunity, in a clear and conspicuous manner, to prohibit such disclosure'") (emphasis added).) As such, Plaintiffs do not state a claim as demonstrated by their own allegations, which are simply based on a mistaken and objectively unreasonable view of the VPPA.

---

[5] The VPPA expressly allows a video tape service provider to disclose PII to the customer him or herself, thus even if these movie recommendations or other solicitations said the recommendation was based on a specific past rental, that disclosure of PII is compliant with the VPPA. 18 U.S.C. § 2710(b)(2)(A) ("A video tape service provider may disclose personally identifiable information concerning any consumer--(A) to the consumer").

**<u>CONCLUSION</u>**

As demonstrated above, Plaintiffs' new disclosure allegations fail to state a claim under the pleading standards set forth by governing United States Supreme Court and Seventh Circuit precedents. Moreover, it is clear that there is no factual basis for these claims and, at best, they are based on Plaintiffs' objectively unreasonable misreading and confusion regarding the application of the VPPA. In short, Plaintiffs' disclosure allegations should be dismissed and they should not be allowed to replead unless they have an actual basis for such claims, which is simply not possible because Redbox is in full compliance with the VPPA.

Dated: July 28, 2011                      Respectfully submitted,

                                          /s/ Anthony T. Eliseuson
                                          One of the attorneys for Defendant Redbox
                                          Automated Retail, LLC

Donna J. Vobornik (ARDC #6195767)
Natalie J. Spears (ARDC #6230320)
Anthony T. Eliseuson (ARDC #6277427)
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@snrdenton.com
natalie.spears@snrdenton.com
anthony.eliseuson@snrdenton.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony T. Eliseuson, an attorney, hereby certify that on July 28, 2011, I electronically filed the preceding with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to the following:

- **Ari J. Scharg**
  ascharg@edelson.com

- **William C. Gray**
  wgray@edelson.com

- **Rafey S. Balbanian**
  rbalabanian@edelson.com

- **Joseph J. Siprut**
  jsiprut@siprut.com

/s/Anthony T. Eliseuson
Anthony T. Eliseuson