# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ~~BLAKE BOESKY~~**KEVIN STERK and JIAH CHUNG**, individually~~,~~ and on behalf of a class of similarly situated individuals~~,~~  ~~Plaintiff~~**Plaintiffs**,  v.  REDBOX AUTOMATED RETAIL, LLC, a Delaware limited liability company, d/b/a/ Redbox~~.~~**,**  Defendant. | Case No. 11-cv-01729  (Consolidated with 11-cv-01819)  The Honorable Matthew F. Kennelly |

**AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs ~~Blake Boesky and~~ Kevin Sterk **and Jiah Chung**, individually and on behalf of all others similarly situated, bring this **Amended Consolidated** Class Action Complaint against Defendant Redbox Automated Retail, LLC, by and through their attorneys, upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, complain and allege as follows:

**INTRODUCTION**

1. Plaintiffs ~~Blake Boesky and~~ Kevin Sterk **and Jiah Chung** bring this **Amended Consolidated** Class Action Complaint against Defendant Redbox Automated Retail, LLC ("Redbox" or "Defendant") for its unlawful retention **and disclosure** of their personally identifiable information, including **their names, addresses,** credit information, billing ~~address~~**addresses**, and video programming viewing history in violation of the Video Privacy Protection Act, 18 U.S.C. ~~§§ 2710, *et. seq*.~~**§ 2710** ("VPPA").

2. Redbox is a popular American company that rents and sells digital video disks ("DVDs") to consumers through automated, self-service kiosks located at various retail outlets. Currently, Redbox owns and operates more than 30,000 kiosks throughout the United States.

3. Redbox maintains a digital record system that details the purchase and rental histories of every DVD that consumers buy or rent from its kiosks. Redbox also maintains records containing its users' billing ~~address~~**addresses**.

4. As a result, Redbox maintains a veritable digital dossier on millions of consumers throughout the country. These records contain not only its customers' credit card ~~number~~**numbers** and billing/contact information, but also a highly detailed account of its customers' video programming viewing ~~history~~**histories**.

5. In recognition of the fact that companies who rent or sell digital media—like Redbox—must collect certain confidential and sensitive consumer information with respect to personal viewing habits, the VPPA requires such companies to "destroy personally identifiable information as soon as practicable." 18 U.S.C. § 2710(e).

6. However, in direct contravention of the protections afforded to consumers under the VPPA, Redbox maintains and stores its customers' **names,** credit card ~~number~~**numbers**, billing and contact information, and most importantly, sensitive video programming viewing ~~history~~**histories** for an indefinite period of time.

7. **Worse yet, Redbox uses the information identified in Paragraph 6 for, among other things, marketing and advertising, without obtaining the "informed, written consent of the consumer at the time disclosure is sought," 18 U. S.C. § 2710(b)(2)(b), and without providing its customers "with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure." § 2710(b)(2)(D)(i).**

**8.** Accordingly, Redbox has knowingly retained **and, on information and belief, disclosed** the "personally identifiable information" and sensitive video programming viewing histories of millions of consumers in violation of the VPPA.

## PARTIES

8.**9.** Plaintiff ~~Blake Boesky~~**Jiah Chung** is a natural person and ~~a~~ citizen of the State of ~~California~~**Michigan**.

9.**10.** Plaintiff Kevin Sterk is a natural person and a citizen of the State of Illinois.

10.**11.** Defendant Redbox Automated Retail, LLC is a ~~Delaware~~ limited liability company **organized and existing under the laws of the State of Delaware** with its headquarters and principal place of business located at One Tower Lane, Oakbrook, IL 60181. Redbox does business throughout Illinois and the United States.

## JURISDICTION AND VENUE

11.**12.** This Court has subject matter jurisdiction over Plaintiffs' claims arising under the laws of the United States pursuant to 28 U.S.C. § 1331, and, as to all other claims, pursuant to 28 U.S.C. § 1367.

12.**13.** This Court has personal jurisdiction over Redbox because it maintains its corporate headquarters in this District, and the improper conduct alleged in the Complaint occurred in, was directed and/or emanated from Illinois.

13.**14.** This Court is an appropriate venue for the adjudication of this controversy because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL BACKGROUND

*The Video Privacy Protection Act and Digital Dossiers*

14.**15.** The desire to keep video programming viewing history records private led Congress to enact the Video Privacy Protection Act in 1988. Inspired by the release of video viewing records of Supreme Court Justice Nominee Robert H. Bork and his family, Congress promulgated the Act to explicitly preserve United States citizens' right to privacy in their video viewing histories.

15.**16.** When the VPPA was introduced, the late Senator Paul Simon noted that:

> There is no denying that the computer age has revolutionized our world. Over the past 20 years we have seen remarkable changes in the way each one of us goes about our lives. Our children learn through computers. We bank by machine. We watch movies in our living rooms. These technological innovations are exciting and as a nation we should be proud of the accomplishments we have made. Yet, as we continue to move ahead, we must protect time honored values that are so central to this society, particularly our right to privacy . The advent of the computer means not only that we can be more efficient than ever before, but that we have the ability to be more intrusive than ever before. *Every day Americans are forced to provide to businesses and others personal information without having any control over where that information goes. These records are a window into our loves, likes, and dislikes.*

S.Rep. No. 100-599 at 7-8 (1988) (emphasis added).

16.**17.** In another strikingly accurate forward-looking statement, Senator Patrick Leahy remarked that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S.Rep. No. 100-599 at 8 (1988).

17.**18.** Although in 1988 these Senators could not possibly forecast the amount of data collected on**about** consumers today by large video-programming providers such as Redbox, both Sen. Simon's and Sen. Leahy's comments would prove prescient.

18.**19.** Many glaring and dangerous privacy issues are implicated by Redbox's practice of retaining **its customers'** video programming viewing history**histories** indefinitely —the exact type of dangers that the VPPA was enacted to thwart.

~~19.~~**20.** Accordingly, the VPPA affords consumers significant protections with respect to the storage, confidentiality, and ultimate destruction of any records concerning the names and titles of any movies they have rented or purchased.

~~20.~~**21.** Specifically, the VPPA requires video-programming providers to destroy "personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected…." 18 U.S.C. § 2710(e).

~~21.~~**22.** Under the VPPA, the term "personally identifiable information" means ~~all~~**names, addresses, and** "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U. S. C. § ~~2710~~**27 1 0**(a)(4)**; 18 U.S.C. § 2710(b)(2)(D).**

**23. The VPPA also requires "video tape service providers" to keep all "personally identifiable information" strictly confidential. In fact, names, addresses, and subject matter cannot even be used for marketing purposes unless the customer has been provided with "the opportunity, in a clear and conspicuous manner, to prohibit such disclosure." 18 U.S.C. § 2710(b)(2)(D)(i)-(ii**).

*A Brief Overview of Redbox*

~~22.~~**24.** Redbox provides DVDs to consumers through a nationwide network of over 30,000 self-service kiosks. Each kiosk features an interactive touch screen, a robotic disk array system, and a web-linked electronic communications system that allows consumers to rent or buy DVDs. Kiosks typically hold approximately 700 DVDs, offering between 70 and 200 titles. The kiosks are ~~updates~~**updated** weekly with a supply of new-release DVDs.

~~23.~~**25.** The rental of a DVD through Redbox is a four-step process. First, the customer searches the kiosks' selection by using its interactive touch screen. Second, after the customer has identified a DVD **that he or she wishes** to rent, the customer enters his **or her** credit or debit card information by swiping ~~his~~**their** credit or debit card through the kiosk, and manually enters his **or her** Zip Code. Third, the selected DVD is dispensed by the kiosk to the customer. Fourth, the customer returns the rented DVD to any Redbox kiosk.

**26.** **During this multi-step process, and contrary to its representations in these judicial proceedings, Redbox does not obtain the consent of its customers to retain, let alone share, their personally identifiable information.**

**27.** **Indeed, although Redbox did—as a consequence of this lawsuit—modify its kiosks to display a link to its Terms of Use and Privacy Policy, during the relevant time period, there were (a) no disclosures whatsoever on the kiosks, or (b) disclosures that were intentionally buried so that consumers would not see them, let alone consent to their terms.**

~~24.~~**28.** Customers are charged approximately $1.00 - $2.00 plus any applicable taxes for their rental. The customer must return the DVD to a Redbox kiosk before 9 P.M. the following day. Otherwise, they are charged an additional day for the rented DVD. If the customer has not returned the DVD ~~with~~**within** 25 days **of the rental date**, then Redbox charges the customer's credit or debit card the cost of the DVD, at which point, the customer owns the movie outright.

~~25.~~**29.** Redbox requires consumers to use only credit or debit cards to rent or purchase DVDs.

~~26.~~**30.** It is Redbox's corporate policy to not provide refunds to any consumer for charges that are over 90 days old.

*Redbox Systematically Violates The VPPA*

27.**31.** With every rental transaction, Redbox collects, stores and maintains its customers' credit and debit card information, billing address**addresses**, and most importantly, video programming viewing history**histories** for an indefinite period of time.

28.**32.** The video programming viewing history**histories** that Redbox stores includes every DVD that the customer has ever rented or purchased from Redbox, as well as, information which identifies the customer as having requested or obtained specific video materials or services.

29.**33.** In light of the fact that its customers' DVD rental transactions are necessarily completed within 25 days from the date of the rental, and given Redbox's corporate policy to not provide refunds for charges that are over 90 days old, Redbox systematically violates the VPPA by storing and maintaining its customers' "personally identifiable information," as that term is defined by the VPPA, for longer than 90 days.

**34. Similarly, Redbox uses the "personally identifiable information" collected from its customers for marketing and advertising purposes, without its customers' consent.**

### FACTS RELATING TO PLAINTIFFS

30.**35.** Plaintiff Blake Boesky**Jiah Chung** is a former Redbox customer.

31.**36.** Plaintiff **Chung** utilized a Redbox kiosk to rent three (3) DVDs**a DVD** on or about May 14, 2010.**November 27, 2009.**

32.**37.** Plaintiff **timely** returned said DVDs on or about May 17, 2010.**DVD.**

33.**38.** While Plaintiff **Chung**'s transaction was completed more than 10 months**one (1) year** ago, Redbox continues to store and maintain Plaintiff's**her** personally identifiable information, including his**her** personal video programming viewing history, and billing address.

**39.     Additionally, Redbox disclosed Plaintiff Chung's "personally identifiable information" for marketing purposes without her informed, written consent, and without providing her a clear and conspicuous opportunity to prevent such disclosures.**

~~34.~~**40.**  Plaintiff Kevin Sterk is a former Redbox customer.

~~35.~~**41.**  Plaintiff utilized a Redbox kiosk to rent certain DVDs on or about February 22, 2010.

~~36.~~**42.**  Plaintiff returned said DVDs on or about February 24, 2010.

~~37.~~**43.**  While Plaintiff **Sterk**'s transaction was completed more than one year ago, Redbox continues to store and maintain Plaintiff's personally identifiable information, including his personal video programming viewing history, and billing address~~,~~**.**

**44.     Additionally, Redbox disclosed Plaintiff Sterk's "personally identifiable information" for marketing purposes without his informed, written consent and without providing him a clear and conspicuous opportunity to prevent such disclosures.**

## CLASS ALLEGATIONS

~~38.~~**45.**  **Definition of the Class**:  Plaintiffs bring this lawsuit pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of themselves and ~~a Class~~**two Classes** of similarly situated individuals defined as follows:

> **The Unlawful Retention Class:**     All persons in the United States who **(a)** rented or purchased a DVD from a Redbox kiosk wherein **(b)** Redbox retained **for more than 90 days** their personally identifiable information, including information ~~which~~**that** identifies the person as having requested or obtained specific video materials or services, ~~for more than 90 days~~**and (c) without their consent.**

> **The Unlawful Disclosure Class:**     **All persons in the United States who rented or purchased a DVD from a Redbox kiosk wherein Redbox disclosed their personally identifiable information**.

The following individuals and entities are excluded from the ~~Class~~**Classes**: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which

Defendant or its parents have a controlling interest and their current and former employees, officers, and directors; (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family; (3) persons who execute and file a timely request for exclusion; and (4) the legal representatives, successors, or assigns of any such excluded person.

  39.**46.** **Numerosity**: Although the precise number of Class members is not known at this time, it is clear that individual joinder in this case is impracticable.  The ~~Class is~~**Classes are** composed of thousands of individuals, all of ~~who~~**whom** may be readily identified through Defendant's records.

  40.**47.** **Commonality**:  Common questions of law and fact pertain to both Plaintiffs and the other members of the ~~Class~~**Classes**, and those questions predominate over any questions that may affect individual members of the ~~Class~~**Classes**.  Common questions for the ~~Class~~**Classes** include but are not limited to the following:

  a. Whether Redbox unlawfully retained its ~~former subscribers~~**customers**' personally identifiable information and personal video programming viewing histories;~~ and~~

  b. **Whether Redbox unlawfully disclosed its customers' personally identifiable information and personal video programming viewing histories; and**

  **c.** Whether Redbox's conduct violates the Video Privacy Protection Act, 18 U.S.C. ~~§§ 2710, *et seq.*~~**§ 2710.**

  41.**48.** **Typicality**:  The factual and legal bases of Redbox's liability to Plaintiffs and to the other members of the ~~Class~~**Classes** are the same and resulted in injury to Plaintiffs and all of the other members of the ~~Class~~**Classes**.  Plaintiffs and the other members of the ~~Class~~**Classes** have all suffered harm as a result of Redbox's wrongful conduct.

~~42.~~**49.** **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class members, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the ~~Class~~**Classes** and Defendant has no defenses unique to Plaintiffs.

~~43.~~**50.** **Predominance and Superiority**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by the individual members of the ~~Class~~**Classes** will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for the individual members of the ~~Class~~**Classes** to obtain effective relief from Defendant's misconduct. Even if members of the ~~Class~~**Classes** themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

~~44.~~**51.** **Policies Generally Applicable to the ~~Class~~Classes**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the ~~Class~~**Classes**, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the ~~Class~~**Classes** as a whole. Defendant's policies challenged herein apply to and affect all members of the ~~Class~~**Classes** uniformly, and

Plaintiffs' challenge of these policies hinges on Defendant's conduct, not on facts or law applicable only to Plaintiffs.

### COUNT I: Violation of the Video Privacy Protection Act
### (18 U.S.C. §§ 2710, et seq.)
### (On Behalf of Plaintiffs and the ~~Class~~**Classes**)

~~45.~~**52.** Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

~~46.~~**53.** Redbox is a "video tape service provider" as defined by VPPA because it "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery or prerecorded video cassette tapes or similar audio visual materials." 18 U. S.C. § 2710(a)(4).

~~47.~~**54.** Plaintiffs are "consumer(s)," as defined by the VPPA, because each is a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U. S.C. § 2710(a)(1).

~~48.~~**55.** The VPPA requires that service providers "destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected." 18 U.S.C. § 2710(e).

~~49.~~**56.** As Redbox's customer rental transactions are completed within 25 days of the rental of the DVD (as the DVD is either returned or automatically purchased within that time), and Redbox does not provide refunds for charges that are more than 90 days old, it is not necessary for Redbox to store and maintain Plaintiffs' personally identifiable information and personal video programming viewing ~~history~~**histories** for longer than 90 days.

~~50.~~**57.** Accordingly, and in violation of the 18 U. S.C. § 2710(e), Redbox has failed ~~todestroy~~**to destroy** its customers' personal information as soon as practicable after it was no longer necessary for the purpose for which it was collected.

**58.** **The VPPA also requires Redbox to keep its customers' "personally identifiable information" confidential. 18 U. S.C. § 27 1 0(b)(1). "Personally identifiable information" cannot be disclosed to "any person without the informed, written consent of the consumer given at the time the disclosure is sought." 18 U.S.C. § 2710(b)(2)(B).**

**59.** **Furthermore, customers' names, addresses, and rental subject matter cannot even be used for marketing purposes unless Redbox first provides the customer with the "opportunity, in a clear and conspicuous manner, to prohibit such disclosure." 18 U.S.C. § 2710(b)(2)(D)(i).**

**60.** **Plaintiffs Chung's and Sterk's "personally identifiable information" was disclosed for marketing and advertising purposes without their informed, written consent, or an opportunity to prohibit such disclosures.**

**61.** **Similarly, Plaintiffs Chung and Sterk never agreed to Redbox's Terms of Service or Privacy Policy that was posted on Redbox's website because Plaintiffs' transaction was conducted at a Redbox kiosk, and the Terms of Service and Privacy Policy were never displayed, or even referred to, during the transaction, nor did the kiosks direct Plaintiffs to Redbox's website.**

~~51.~~**62.** As a result, Plaintiffs and the ~~Class~~**Classes** have suffered injuries. Defendant's illegal conduct should be enjoined, and Plaintiffs and the ~~Class~~**Classes** should be awarded the maximum statutory and punitive damages available under 18 U. S. C. § ~~2710~~**27 1 0**(c).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ~~Blake Boesky~~**Jiah Chung** and Kevin Sterk pray that the Court enter judgment in their favor and against Defendant Redbox Automated Retail, LLC, and for the following relief:

A. Certify the action as a class action on behalf of the ~~Class~~**Classes** defined above, appoint Plaintiffs as Class Representatives, and designate their counsel as ~~representatives of the Class~~ **Counsel**;

B. Declare that Redbox's conduct, as described herein, violates the Video Privacy Protection Act, 18 U. S. C. ~~§§ 2710, et seq.~~**§ 27 10**;

C. Award injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the ~~Class~~**Classes**, including both an order prohibiting Redbox from engaging in the wrongful and unlawful acts described herein and requiring Redbox to destroy its customers' personal information and video viewing histories that are no longer necessary for the purpose for which it was collected**, and to terminate its practice of disclosing such information without its customers' informed, written consent at the time of each disclosure**;

D. Award damages, including statutory damages of $2,500 per violation under the Video Privacy Protection Act, 18 U. S. C. § ~~2710~~**27 1 0**(c) and punitive damages where applicable, to Plaintiffs and the ~~Class~~**Classes** in an amount to be determined at trial;

E. Award Plaintiffs and the ~~Class~~**Classes** their reasonable litigation expenses and attorneys' fees;

F. Award Plaintiffs and the ~~Class~~**Classes** pre- and post ~~-~~judgment interest, to the extent allowable; and

G. Award such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated: ~~May 10,~~**June 30,** 2011	Respectfully submitted,

**~~BLAKE BOESKY~~JIAH CHUNG** and **KEVIN STERK**, individually and on behalf of a class of similarly situated individuals,

By: /s/ Ari J. Scharg
 One of their attorneys

Jay Edelson
Rafey S. Balabanian
~~Bill~~**William** C. Gray
Ari J. Scharg
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
jedelson@edelson.com
rbalabanian@edelson.com
~~bgray@edelson.com~~
**wgray@edelson.com**
ascharg@edelson.com

Joseph J. Siprut
SIPRUT PC
122 South Michigan Ave. Suite 1850
Chicago, IL 60603
Telephone: (312) 588-1440
jsiprut@siprut.com

**CERTIFICATE OF SERVICE**

I, Ari J. Scharg, an attorney, certify that on ~~May 10,~~**June 30,** 2011, I served the above and foregoing ***Amended** Consolidated** Class Action** Complaint*, by causing true and accurate copies of such paper to be filed and transmitted to the persons shown below via the Court's CM/ECF electronic filing system, on this the ~~10~~**30**th day of ~~May~~**June**, 2011.

/s/ Ari J. Scharg