**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JIA CHUNG and KEVIN STERK, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 1:11-cv-01729 |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Honorable Matthew F. Kennelly |
| REDBOX AUTOMATED RETAIL, LLC, | ) ) ) | Magistrate Judge Jeffrey T. Gilbert |
| Defendant. | ) ) | |

**DEFENDANT REDBOX AUTOMATED RETAIL, LLC'S
REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Dated:  July 30, 2011

Donna J. Vobornik (ARDC #6195767)
Natalie J. Spears (ARDC #6230320)
Anthony T. Eliseuson (ARDC #6277427)
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@snrdenton.com
natalie.spears@snrdenton.com
anthony.eliseuson@snrdenton.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

## **TABLE OF CONTENTS**

**INTRODUCTION**.................................................................................................................. 1

**ARGUMENT** ........................................................................................................................ 2

**I.**   **Not A Single One Of The Cases Under The Statutes Plaintiffs Cite (Much Less The VPPA) Has Found A Private Right Of Action Exists For Mere Retention Claims.**......... 2

    **A.**   **Plaintiffs mischaracterize the VPPA cases upon which they rely, and there is not a single case that has held a private right of action exists for a violation of the destruction of old records provision**................................................................................. 2

    **B.**   **Plaintiffs' cases addressing the other privacy statutes do not compel the conclusion that a private right of action exists for subsection (e), and in fact prove exactly the opposite.** ..................................................................................................................... 4

        **1.**   **The Cable Act's statutory structure simply serves to demonstrate why the Sixth Circuit was correct in finding the VPPA did not allow for a private right of action for retention claims**................................................................................... 4

        **2.**   **The Drivers Privacy Protection Act cited by Plaintiffs *does not contain any destruction of records provision*.** .................................................................... 6

**II.**   **Plaintiffs' Response Fails To Provide Any Compelling Reason To Deviate From The Well-Reasoned Conclusion Of The Sixth Circuit That The VPPA Does *Not* Create A Private Right Of Action For Mere Retention Claims.**............................................... 7

    **A.**   **As this Court has recognized the term "section" can be ambiguous.** ............................. 7

    **B.**   **The structure of the VPPA as a whole further demonstrates Plaintiffs' proffered interpretation is wrong and the Sixth Circuit's interpretation was correct**.................. 8

    **C.**   **The inclusion of specific language in the disclosure provision referencing the civil action provision, which is absent from the destruction of old records provision, also supports the Sixth Circuit's narrow interpretation**........................................................ 9

    **D.**   **Plaintiffs fail to point to any legislative history that would suggest Congress intended the meaning Plaintiffs propose**........................................................................ 11

    **E.**   **Any ambiguity should be resolved in favor of Redbox under the rule of lenity.** ......... 11

**III.**   **Plaintiffs' Response Fails To Demonstrate That They Asserted *Any* Violation Of The Destruction Of Old Records Provision.** .............................................................. 13

    **A.**   **Plaintiffs' allegations fail to address—let alone overcome—the point that any PII Redbox collected would have been collected for, among other reasons, marketing purposes, as expressly allowed by the VPPA.** .................................................................. 13

**B. Plaintiffs' proffered reading of the VPPA that would require destruction "as soon as practicable" rather than within the one year statutory period is impermissibly vague**...................................................................................................................... 14

**C. Plaintiffs' claims also fail because they do not allege Redbox is no longer using PII for any other reasons for which such information may have been collected, and Plaintiffs' new allegations demonstrate that PII is "necessary" for up to 10 years even under Plaintiffs' flawed theory.** ...................................................................... 15

**IV. Plaintiffs' After-The-Fact Reliance On The Stored Communications Act ("SCA") As A Supposed Source Of Their Right Of Action Simply Demonstrates Plaintiffs Recognize They Have No Right Of Action Under The VPPA.** ....................................... 17

**CONCLUSION** ........................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amazon.com LLC v. Lay*,
    758 F. Supp. 2d 1154 (W.D. Wash. 2010)..................................................................4, 6, 7

*Antoine v. Star Ledger of New Jersey*,
    No. 09-1827, 2010 WL 183611 (D.N.J. May 6, 2010).......................................................3, 4

*Bailey v. United States*,
    516 U.S. 137 (1995).................................................................................................................9

*Bissessur v. Indiana Univ. Bd. of Trustees*,
    581 F.3d 599 (7th Cir. 2009) ...............................................................................................17

*Clark v. Riley*,
    595 F.3d 1258 (11th Cir. 2010) .............................................................................................7

*Crandon v. United States*,
    494 U.S. 152 (1990)..............................................................................................................12

*Daniel v. Cantrell*,
    375 F.3d 377 (6th Cir. 2004), *cert. denied,* 125 S. Ct. 874 (2005)................................ passim

*DeJohn v. The .TV Corp. Int'l*,
    245 F. Supp. 2d 913 (N.D. Ill. 2003) ..................................................................................13

*Denius v. Dunlap*,
    330 F.3d 919 (7th Cir. 2003) .................................................................................................3

*Dirkes v. Borough of Runnemede*,
    936 F. Supp. 235 (D.N.J. 1996) .......................................................................................2, 3

*English v. Parker*,
    No. 6:09-cv-1914-Orl-31GJK, 2011 WL 1842890 (M.D. Fla. May 16, 2011).......................7

*Graham County Soil & Water Conserv. Dist. v. United States*,
    545 U.S. 409 (2005)........................................................................................................1, 7, 8

*Implant Innovations, Inc. v. Nobelpharma AM*,
    No. 93 C 7489, 1995 WL 562092 (N.D. Ill. Sept. 14, 1995)...............................................17

*In re DoubleClick Inc. Privacy Litigation*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001).................................................................................18

*INS v. Cardoza-Fonseca*,
    480 U.S. 421 (1987)..............................................................................................................10

*LaBella Winnetka, Inc. v. Vill. of Winnetka*,
   628 F.3d 937 (7th Cir. 2010) ............................................................................14

*Leslie Salt Co. v. United States*,
   55 F.3d 1388 (9th Cir. 1995) ............................................................................12

*Mallett v. Wisconsin Div. of Voc. Rehabilitation*,
   130 F.3d 1245 (7th Cir. 1997) ....................................................................11, 13

*McClain v. Retail Food Employers Joint Pension Plan*,
   413 F.3d 582 (7th Cir. 2005) ............................................................................10

*Nken v. Holder*,
   129 S. Ct. 1749 (2009)..................................................................................9, 10

*Pruitt v. Comcast Holdings, LLC*,
   100 Fed. Appx. 713 (10th Cir. 2004) *cert. denied by* 543 U.S. 1020 (2004) ......................5, 6

*Reed v. Riley*,
   No. 2:07-cv-0190-WKW, 2008 WL 906571 (M.D. Ala. Mar. 31, 2008)................................8

*Reno v. Condon*,
   528 U.S. 141 (2000)............................................................................................6

*Smith v. Bowen*,
   815 F.2d 1152, 1154 (7th Cir. 1987) ................................................................19

*Sorrell v. IMS Health Inc.*,
   131 S. Ct. 2653, 180 L. Ed. 2d 544 (2011)....................................................2, 14

*Thompson v Thompson*,
   484 U.S. 174 (1988)....................................................................................11, 13

*Tremble v. Town & Country Credit Corp.*,
   No. 05 C 2625, 2006 WL 163140 (N.D. Ill. Jan. 18, 2006) ....................1, 7, 8, 11

*U.S. v. United Servs. Auto. Ass'n*,
   5 F.3d 204 (7th Cir. 1993) ................................................................................11

*United States v. Granderson*,
   511 U.S. 39 (1994)............................................................................................12

*United States v. O'Brien*,
   130 S. Ct. 2169 (2010)........................................................................................9

*Walters v. Metro. Educ. Enters., Inc.*,
   519 U.S. 202 (1997)..........................................................................................10

*Warner v. Am. Cablevision of Kansas City, Inc.*,
   699 F. Supp. 851 (D. Kan. 1988).......................................................................6

**STATUTES**

735 ILCS 5/13-206 ...................................................................................................16

Ariz. Rev. Stat. Ann. § 42-1104(A) .........................................................................16

Cable Communications Privacy Act, 47 U.S.C. § 551 ...............................................5

Drivers Privacy Protection Act, 18 U.S.C. §§ 2721-2725 ..........................................6

86 Ill. Admin. Code 130.815(c) ...............................................................................16

Ky. Rev. Stat. Ann. § 139.620(1) .............................................................................16

Md. Code Ann. Tax-Gen. § 13-1102(a) ....................................................................16

Ohio Rev. Code Ann. § 5739.16(A) ..........................................................................16

Stored Communications Act, 18 U.S.C. §§ 2701-2712 .........................................17, 18

Video Privacy Protection Act, 18 U.S.C. § 2710 .............................................. passim

Wis. Stat. § 77.59(3) ................................................................................................16

**OTHER AUTHORITIES**

S. Rep. No. 99-541, 1986 U.S.C.C.A.N. 3555 ..........................................................18

## INTRODUCTION

Plaintiffs spend the bulk of their response on the question of whether *any* private right of action can possibly exist for a violation of the "destruction of old records"[1] provision of the Video Privacy Protection Act, 18 U.S.C. § 2710(e) (the "VPPA"), and largely ignore the equally fundamental question of whether Plaintiffs have even stated a violation in the first place.

As to the private right of action question, Plaintiffs offer no compelling reason for this Court to deviate from the holding of the Sixth Circuit that squarely (and correctly) held there is *only* a private right of action under the VPPA for disclosure claims—and no private right of action for claims strictly involving retention under subsection (e). *Daniel v. Cantrell*, 375 F.3d 377, 384 (6th Cir. 2004), *cert. denied,* 125 S. Ct. 874 (2005). Indeed, Plaintiffs' mischaracterizations of other cases (most of which address statutes other than the VPPA) notwithstanding, the simple fact is that only one case has directly analyzed the question of whether retention (alone) triggers a private right of action in the context of any of the statutes mentioned by Plaintiffs, and in that case Judge Cudahy and the Sixth Circuit concluded that, under the VPPA, it does *not*. *Id.*

Plaintiffs' Response argues that the Sixth Circuit's decision was incorrect by clinging to a single word—"section"—and ignoring contrary language contained in the statute as well as other fundamental rules of construction used by the Sixth Circuit when it construed the VPPA. (Resp. at 5-7.) But as this Court has noted (in a case not cited by Plaintiffs) even "a word that is clear by itself—including 'section'—may sometimes be rendered ambiguous by its context." *Tremble v. Town & Country Credit Corp.*, No. 05 C 2625, 2006 WL 163140, at *2 (N.D. Ill. Jan. 18, 2006) (citing *Graham County Soil & Water Conserv. Dist. v. United States*, 545 U.S. 409 (2005)). While this Court found, consistent with other cases, that the use of "section" in the statute at issue in *Tremble* was not ambiguous, here the broad reading of "section" that Plaintiffs proffer would cause the VPPA to be ambiguous and would render other language in the statute mere surplusage. Thus, drawing on the appropriate cannons of statutory construction, it is apparent that the VPPA should be read to limit the civil action provision to disclosure claims, just as the *Daniel* court concluded.

---

[1] Pursuant to this Court's July 6, 2011 Order, Redbox will address Plaintiffs' new disclosure claims that were asserted in their Second Amended Complaint in a separate motion and supporting memorandum.

Equally fatal to Plaintiffs' claim, as explained below and in Redbox Automated Retail, LLC's ("Redbox") opening memorandum, is that even if there were a theoretical private right of action, Plaintiffs fundamentally fail to allege a violation of the destruction of old records provision in any event. First, Plaintiffs have not alleged (and cannot possibly allege) Redbox is no longer using their information for the purpose for which it was collected, when to the extent any "personally identifiable information" or "PII" was collected by Redbox, it was collected for, among other reasons, Redbox's own marketing purposes as stated in Redbox's Terms of Use and Privacy Policy. Redbox's right to use this information for marketing purposes is not to be taken lightly. Marketing is a corporate free speech activity protected by the First Amendment. *See Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 180 L. Ed. 2d 544, 562 (2011). Second, even accepting Plaintiffs' erroneous theory regarding why Redbox collects PII, Plaintiffs' claims would still fail because Plaintiffs' interpretation of the VPPA—which would require Redbox to destroy PII "as soon as practicable" once it is no longer used for the purpose for which it was collected— both ignores the express one year statutory period, and would be an impermissibly vague interpretation of the statute.

## ARGUMENT

I. **Not A Single One Of The Cases Under The Statutes Plaintiffs Cite (Much Less The VPPA) Has Found A Private Right Of Action Exists For Mere Retention Claims.**

Plaintiffs' Response asserts that two cases have found a private right of action exists for retention violations of the VPPA (Resp. at 7-8), and that other courts have found such private rights of actions exist for violation of retention provisions with similar language to the VPPA. (Resp. 10-15.) Plaintiffs are flat out wrong, and, frankly, the assertions in their brief cannot be justified by any objective standard.

A. **Plaintiffs mischaracterize the VPPA cases upon which they rely, and there is not a single case that has held a private right of action exists for a violation of the destruction of old records provision.**

Neither New Jersey district court case relied on by Plaintiffs involved the destruction of records provision, and the language Plaintiffs rely upon is nothing more than passing dicta made in a background discussion of the VPPA. In *Dirkes v. Borough of Runnemede*, 936 F. Supp. 235 (D.N.J. 1996), the issue before the court was whether a lieutenant of a police department and the

department itself were proper defendants under the VPPA when, in the course of investigating a police officer for misconduct, the lieutenant obtained the names and rental dates of certain videotapes rented by the officer. In a generalized discussion of the VPPA preceding the court's analysis (*i.e.,* a background discussion), the district court made a one sentence statement concerning the failure to timely destroy a customer's PII. *Id.* at 239. It is this one sentence that Plaintiffs latch onto as demonstrating that the District of New Jersey has "found" a private right of action for a violation of subsection (e). (Resp. at 8.) But the reality is the sentence merely appears in a background discussion of the statute itself that bore no impact on the court's ultimate analysis.

Indeed, the *Dirkes* court specifically found the claims at issue involved violations of only the disclosure provision of the VPPA and a violation of the provision relating to using PII in evidence before a court. *Id.* The destruction of records provision was not at issue—let alone meaningfully discussed. And unlike the direct discussion of section (e) in *Daniel*, the *Dirkes* court did not meaningfully analyze the issue of a private right of action at all. Furthermore, with regard to the key word "section" that Plaintiffs argue supports their broad reading of the VPPA (Resp. at 5-7), it is notable that the *Dirkes* court's quotation of the statutory text actually substituted that term with its own language of "§ 2710," thus expressly rewriting the statutory text. *Id.* at 239.[2]

Similarly, Plaintiffs' citation to a subsequent District of New Jersey case referencing the VPPA, *Antoine v. Star Ledger of New Jersey*, No. 09-1827, 2010 WL 183611 (D.N.J. May 6, 2010), is even more absurd given its facts. There, the case *had nothing to do* with videotapes or videotape rentals at all. *Id.* at *4 ("Antoine has not plead anything to implicate that videotapes or information stemming from videotape rentals were involved in defendants' misconduct."). Instead, the case centered around a newspaper article that defendants published following plaintiff's arrest. *Id.* at *1. Plaintiff alleged the reporter and the newspaper published lies about him and had "an 'extreme' bias against him" because of their "interconnectedness with local and state law enforcement," with which the pro se plaintiff had a long and litigious history. *Id.* Given

---

[2] As Redbox noted in its opening memorandum, the Sixth Circuit harshly criticized the *Dirkes* reasoning. *Daniel*, 375 F.3d at 382-83 & n.3 (criticizing the reasoning of *Dirkes* relating to other aspects of the VPPA, including stating the *Dirkes* court's conclusion was based on a "misreading" of the Act, and stating "[w]e do not know what statute the court in *Dirkes* was reading").

the facts of the case, the court quickly disposed of the allegations made under the VPPA, citing *Dirkes*. *Id.* at *4. Once again, the reference to the VPPA's destruction provision did not figure into the court's analysis at all; accordingly, it is simply disingenuous to suggest that the *Antoine* court "found that a private right of action exists for a subsection (e) violation." (Resp. at 8.)

The same is true for *Amazon.com LLC v. Lay*, 758 F. Supp. 2d 1154 (W.D. Wash. 2010), where the court did not even reference subsection (e) whatsoever in its discussion of the VPPA. Rather, the VPPA issue facing the court was whether a non-video tape service provider could be a defendant under the statute. *Id.* at 1167 (addressing this issue in the context of Amazon.com's attempt to avoid *disclosing* PII to the North Carolina Department of Revenue). The court made no determination of whether subsection (e) specifically grants a private right of action.

Unlike the cases cited by Plaintiffs, the Sixth Circuit in *Daniel* is the *only* case to have addressed and squarely analyzed the issue facing this Court. *Daniel*, 375 F.3d at 384 (stating it was unclear if the plaintiff was asserting a claim based on a violation of a non-disclosure provision of the VPPA, and therefore "in the interests of completeness we will explain why such a claim must fail"). The discussion that followed, in which the Sixth Circuit held that the VPPA did *not* create a private right of action for any non-disclosure violations, the Court found that "only § 2710(b) can form the basis of liability." This statement is clearly not "dicta" as the Plaintiffs claim; rather it was necessary for the Court's analysis to determine its alternative holding that any Section 2710(d) claims failed (and the Sixth Circuit recognized its analysis applied with equal force to the destruction of old records provision too). *Id.*

**B.    Plaintiffs' cases addressing the other privacy statutes do not compel the conclusion that a private right of action exists for subsection (e), and in fact prove exactly the opposite.**

Plaintiffs' cases concerning other privacy statutes also fall far short of providing "overwhelming support" (Resp. 11); rather they simply serve to demonstrate the Sixth Circuit's analysis of the VPPA was correct.

**1.    The Cable Act's statutory structure simply serves to demonstrate why the Sixth Circuit was correct in finding the VPPA did not allow for a private right of action for retention claims.**

While Plaintiffs spend nearly two pages (Resp. at 11-12) explaining the supposed similarity

between the statutory language in the VPPA and the Cable Act,[3] Plaintiffs completely ignore the most important difference, and one that the Sixth Circuit found dispositive in its interpretation of the VPPA: that unlike the VPPA, the Cable Act's civil action provision comes *immediately after* the destruction of records provision (47 U.S.C. § 551(e)-(f)), which is completely different than the VPPA where, as the Sixth Circuit observed, the placement of the civil action provision several sections *before* the destruction of records provision demonstrated Congress's intent to limit private right of actions to the immediately preceding disclosure provision. *Daniel*, 375 F.3d at 384 ("the structure of the statute make[s] it clear that a civil action may be brought based only on a violation of section (b) . . . [because i]f these later sections were to be a basis for liability, it would make sense that the section on civil actions would come at the end of the statute, rather than preceding these section."); *see also, infra,* Section II-B. Thus, even if cases had found a private right of action existed for retention claims under the Cable Act (and they have not), such holdings would be inapposite with regard to the VPPA.

More importantly, despite Plaintiffs' unsupported assertion that "[f]ederal courts across the country have uniformly acknowledged that the Cable Act § 551(f) creates a private right of action for violations of § 551(e)" (Resp. at 12), Plaintiffs are unable to cite a *single* case that actually contains such a holding (because there is none). In the unpublished case of *Pruitt v. Comcast Holdings, LLC*, 100 Fed. Appx. 713 (10th Cir. 2004) (unpublished) *cert. denied by* 543 U.S. 1020 (2004), the Tenth Circuit did not even mention, much less address, the issue of whether pure retention of PII would violate the Cable Act because the Court affirmed the lower court's dismissal of such claims because the information at issue—pay per view purchase history stored in a cable converter box—was not PII, and that fact alone was dispositive. *Id.* at 716. Similarly, in *Warner v. Am. Cablevision of Kansas City, Inc.*, 699 F. Supp. 851 (D. Kan. 1988), the court did not address whether a private right of action existed for retention violations because the court found no such violations occurred. *Id.* at 857-58. Instead, *Warner* found that the violations at issue were of unique affirmative disclosure obligations imposed in the Cable Act (that are not present in the

---

[3] The 1984 Cable Communications Privacy Act, 47 U.S.C. § 551, *et seq*. (the "Cable Act").

VPPA). *Id.*[4]

### 2. The Drivers Privacy Protection Act cited by Plaintiffs *does not contain any destruction of records provision.*

Plaintiffs next rely upon the DPPA—but the DPPA *does not have any destruction of records provision at all*. 18 U.S.C. §§ 2721, *et seq.*[5] Clearly the DPPA cannot help Plaintiffs' argument given the absence of *the key provision.* In fact, the DPPA simply serves to prove *Redbox's* argument because the civil action provision in the DPPA specifically lists the types of acts that lead to a right of action: "[a] person who knowingly *obtains, discloses or uses* personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724 (emphases added). Thus, if anything, the stark contrast between the broad language contained in the DPPA's civil action provision and that of the VPPA shows that when Congress intends a broad reaching provision to capture several different kinds of conduct, it knows how to write such a provision. The fact that the VPPA's provision does not contain language specifically mentioning "retention" of PII is significant, as is the fact that the only affirmative provision similar to that of the DPPA in the VPPA is found solely in the disclosure section—yet another key point the Sixth Circuit made when it correctly construed the VPPA. *Daniel*, 375 F.3d at 384 (finding the contrast between the express reference to the civil action provision in the disclosure provision compared with the absence of such language in the destruction of old records provision significant); *see also, infra,* at Section II-C. In any event, the DPPA cases clearly are inapposite and add nothing to the analysis of the VPPA since the DPPA

---

[4] Notably, the *Warner* court found the cable provider was *required* to retain the PII for 6 years for tax reasons, which, has been similarly at issue in VPPA cases that Plaintiffs affirmatively cite. *Amazon.com LLC*, 758 F. Supp. 2d at 1158-60 (discussing the North Carolina Department of Revenue's demand for information, including PII, for the past seven years relative to its tax audit of Amazon.com). *See also, infra,* Section III-C (discussing Illinois Administrative Code's document retention requirements for tax purposes).

[5] "The DPPA regulates the disclosure and resale of personal information contained in the records of state DMVs." *Reno v. Condon*, 528 U.S. 141, 143 (2000). Given the purpose of the statute one could understand why there would be no destruction requirement imposed on state departments of motor vehicles.

does not even have a destruction of old records provision.[6]

**II.     Plaintiffs' Response Fails To Provide Any Compelling Reason To Deviate From The Well-Reasoned Conclusion Of The Sixth Circuit That The VPPA Does *Not* Create A Private Right Of Action For Mere Retention Claims.**

**A.     As this Court has recognized the term "section" can be ambiguous.**

Plaintiffs argue that because the civil action provision uses the term "section," it necessarily extends to the destruction of old records provision.  (Resp. at 5-7.)  But the Sixth Circuit read that language, including the term "section," and explained why the civil action provision did not apply to alleged violations of the destruction of old records provisions by properly looking at the statute as a whole as explained below.  *Daniel*, 375 F.3d at 384.  And as this Court has recognized—in a case not cited by Plaintiffs—even "a word that is clear by itself—including 'section'—may sometimes be rendered ambiguous by its context."  *Tremble*, 2006 WL 163140, at *2 (N.D. Ill. Jan. 18, 2006) (citing *Graham County Soil & Water Conserv. Dist. v. United States*, 545 U.S. 409 (2005)).[7]

While this Court in *Tremble* found that the use of "section" in the context of the Fair and Accurate Credit Transaction Act of 2003 was unambiguous (and *eliminated* the private right of actions for violations of certain acts), that conclusion was based on the fact that the statute there used the term "section" broadly within the same sentence and it would be inconsistent to then

---

[6] Consistent with other assertions in its Response, Plaintiffs' selective quotation from *English v. Parker*, No. 6:09-cv-1914-Orl-31GJK, 2011 WL 1842890 (M.D. Fla. May 16, 2011) is completely out of context and, frankly, blatantly misleading, as there was no issue as to the scope of the civil action provision in that case at all--the DPPA expressly states it creates a private right of action for "obtain[ing]" PII in violation of the DPPA and there was no dispute such PII was obtained in *English*.  *Id.* at *3 Rather, the question in *English* was whether the conduct at issue fell under an enumerated permissible use, namely litigation.  *Id.* at *3.  The *English* court's analysis focused exclusively on that issue.

[7] Other courts have similarly found the use of the term "section" to be ambiguous.  For example the Eleventh Circuit recently found that a broad reading of the term "section" in a state statute, as the Plaintiffs' propose here, created an ambiguity because it would create an arbitrary and absurd result that was plainly inconsistent with the purpose of the subprovision at issue.  *Clark v. Riley*, 595 F.3d 1258, 1267-68 (11th Cir. 2010).  Because of the ambiguity created by the use of the term "section," the Eleventh Circuit held it was appropriate to apply normal rules of statutory construction, including looking to the "true meaning and intent of the lawmakers," rather than the "letter of the statute." *Id.* at 1269 (affirming district court's "narrow/narrow" interpretation of statute, citation omitted); *see also Reed v. Riley*, No. 2:07-cv-0190-WKW, 2008 WL 906571, at *4 (M.D. Ala. Mar. 31, 2008) (finding the use of the term "section" to be ambiguous because if "read broadly . . . it creates internal inconsistencies and superfluous language in contradiction to the canons of statutory interpretation").

construe that same term narrowly within the same sentence. *Id.* Here, in stark contrast, the word "section" is used in the VPPA in at least one other location to refer only to a portion of the statute. 18 U.S.C. § 2710(b)(3). Specifically, the VPPA states that "[a] court issuing an order pursuant to *this section . . .* may quash or modify such order . . ." in certain situations. *Id.* (emphasis added). But the only portion of the VPPA that allows an order to be issued is contained in that same "paragraph" of "subsection" (b), specifically at subparagraphs (2)(C) and (2)(F). Thus, unlike the statute at issue in *Tremble*, the VPPA clearly uses the term "section" in a narrow sense to refer to a portion of the VPPA, which renders the use of that term ambiguous under Plaintiffs' proffered interpretation.

This conclusion is bolstered by precedent of the United States Supreme Court. In the case cited by this Court in *Tremble*, the Supreme Court gave a narrow reading to a statute that not only included the term "section," but in fact identified the section number. *Graham County*, 545 U.S. 409. In *Graham County*, the Supreme Court faced the statutory interpretation question of whether the limitations period in § 3731(b) of the False Claims Act applied to actions under § 3730(h). *Id.* at 412-13. The operative language stated that: "(b) A civil action under *section 3730* may not be brought—(1) more than 6 years after the date on which the violation of section 3729 is committed." 31 U.S.C. § 3731(b) (emphasis added). Despite the fact that a plain reading indicates that a six-year limitations period applies to all Section 3730 actions, the Supreme Court found the use of that phrase caused the statute to be ambiguous because it created an internal conflict with other language in the statutory text and led to a result that was not consistent with the statute as a whole, and therefore, that the limitations period did not apply to Section 3730(h) claims despite the use of the term "section." *Graham County*, 545 U.S. at 415-16.

**B.** **The structure of the VPPA as a whole further demonstrates Plaintiffs' proffered interpretation is wrong and the Sixth Circuit's interpretation was correct.**

The rationale of *Graham County* applies with full force here: "[s]tatutory language has meaning only in context," and statutes must be read as a whole not merely out of context as their subcomponent parts. *Graham County*, 545 U.S. at 415 (citing *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004)); *see also Bailey v. United States*, 516 U.S. 137, 145 (1995) *superseded by statute as stated*

*in United States v. O'Brien*, 130 S. Ct. 2169 (2010) ("'[T]he meaning of statutory language, plain or not, depends on context.'") (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). As Redbox explained in its opening memorandum, the United States Supreme Court has recently reiterated this rule. (Op. Mem. at 6-7 (citing, *e.g., Samantar v. Yousuf*, 130 S. Ct. 2278, 2289 (2010) ("[W]e do not construe statutory phrases in isolation; we read statutes as a whole.") (citations and internal punctuation omitted) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)); *Stafford v. Briggs*, 444 U.S. 527, 535-36 (1979)).

As these cases make clear, a statute should be read as a whole and even unambiguously broad language contained in a component part cannot be construed to undermine other language in the statute. (Op. Mem. at 6-7.) This is precisely how the Sixth Circuit construed the VPPA. As the Sixth Circuit noted in *Daniel*, "the structure of the statute make[s] it clear that a civil action may be brought based only on a violation of section (b) . . . [because i]f these later sections were to be a basis for liability, it would make sense that the section on civil actions would come at the end of the statute, rather than preceding these section." *Daniel*, 375 F.3d at 384. The Supreme Court in *Bailey*, specifically recognized that the *location* of statutory language was a highly relevant factor. *Bailey*, 516 U.S. at 143 (requiring courts to interpret statutory language according to "its placement and purpose in the statutory scheme"). And the use of the structure of the statute is one of the foremost cannons of statutory interpretation applied by the United States Supreme Court. *Nken v. Holder*, 129 S. Ct. 1749, 1759 (2009) (noting that "the Court frequently takes Congress's structural choices into consideration when interpreting statutory provisions" and finding the decision to place one "provision four subsections later," demonstrated that, despite the broad language of that subsection, it was not intended to disturb other subprovisions located earlier in the statutory text) (citing *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 50 (2008)).

    **C.    The inclusion of specific language in the disclosure provision referencing the civil action provision, which is absent from the destruction of old records provision, also supports the Sixth Circuit's narrow interpretation.**

While the structure of the VPPA standing alone demonstrates Plaintiffs' proffered reading of the VPPA is in error, Congress's decision to include express language in the disclosure provision referencing the civil action provision, and not include similar language elsewhere,

further undermines Plaintiffs' position. *Compare* Section 2710(b)(1) (stating a person violated the disclosure requirements "shall be liable to the aggrieved person for the relief provided in subsection (d) [sic]") *with* Section 2710(e) (containing no such language). As the *Daniel* court found, this specific language in Section 2710(b) supported a narrow reading of the civil action provision or otherwise such language would be unnecessary surplusage. *Daniel*, 375 F.3d at 384; *see also Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 209 (1997) ("Statutes must be interpreted, if possible, to give each word some operative effect."); *McClain v. Retail Food Employers Joint Pension Plan*, 413 F.3d 582, 587 (7th Cir. 2005) (recognizing the "elementary canon of construction that a statute should be interpreted" to avoid rendering language as superfluous or meaningless) (quotation omitted).

Indeed, when one reads the entirety of the statutory text, this express statement in the disclosure provision is far and away the clearest indicator of the legislative intent and demonstrates it was disclosure violations—and disclosure violations alone—that Congress intended to deter through the civil action provision. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quotations and citations omitted); *Nken*, 129 S. Ct. at 1759 (same principle, citing *Cardoza-Fonseca*). Simply put, the Sixth Circuit, drawing upon the proper cannons of construction, correctly construed the VPPA, and Plaintiffs' lone argument that relies on a single word in the statutory text that would ignore both the structure and render meaningless other complete phrases of the VPPA cannot be justified. (*See also* Op. Mem. at 6-7.)[8]

In sum, Congress's decision to place the disclosure provision immediately before the private right of action, and to place the destruction of old records section much later in the statute,

---

[8] This conclusion is further supported by the general case law addressing whether Congress intended to create a private right of action. *See, e.g., Mallett v. Wisconsin Div. of Voc. Rehabilitation*, 130 F.3d 1245, 1248-49 (7th Cir. 1997) (recognizing that the United States Supreme Court had retreated from the four-factor test of *Cort v. Ash*, 422 U.S. 66, 78 (1975), and instead focused almost exclusively on its second factor: whether there is there any indication that Congress intended, explicitly or implicitly, to create or deny such a remedy). *See also Thompson v Thompson*, 484 U.S. 174, 179 (1988) (recognizing the "statutory structure" was one of the keys to this analysis) (citation omitted).

coupled with the express reference to the civil action provision contained in the disclosure provision—which does not appear in the destruction of old records provision—demonstrates Congress's intent was clearly to limit civil actions to disclosure violations.

> **D.** **Plaintiffs fail to point to any legislative history that would suggest Congress intended the meaning Plaintiffs propose.**

As Redbox explained in its opening memorandum, the legislative history of the VPPA further supports the *Daniel* court's conclusion that the civil action provision only extends to disclosure violations. (Op. Mem. at 7-9.) There is *nothing* in the legislative history that would suggest that Congress intended to create a private right of action for mere retention, and conversely, the legislative history is replete with discussions that *improper disclosure* would be actionable under the civil action provision. (*Id.*)

Plaintiffs' Response not only fails to argue otherwise, it merely incorrectly asserts that legislative history cannot be utilized in this analysis. (Resp. at 9-10.) But where a proffered interpretation would create an ambiguity there is no doubt that courts resort to legislative history to resolve such an ambiguity. *See, e.g., U.S. v. United Servs. Auto. Ass'n,* 5 F.3d 204 (7th Cir. 1993) ("When the plain language of a statute is unclear, we may then look to its legislative history for guidance.") (citations omitted); *Tremble*, 2006 WL 163140, at *2 (collecting cases for the proposition that legislative history should only be considered to resolve an ambiguity in the statutory language). Here, if the term "section" is construed broadly as Plaintiffs' propose, the VPPA clearly suffers from such ambiguity because it directly conflicts with the structure of the statute, and renders the express language in the disclosure provision surplusage.[9]

> **E.** **Any ambiguity should be resolved in favor of Redbox under the rule of lenity.**

Plaintiffs also incorrectly argue that the rule of lenity does not apply because the VPPA carries no criminal penalties. (Resp. at 19.) But the rule of lenity—which requires statutes to be

---

[9] Plaintiffs argue that Congress's failure to pass a "technical corrections amendment" somehow supports their reading of the statute. (Resp. at 10.) But there is no reason to pass such an amendment when during the nearly quarter of a century since the VPPA's passage there is not a single case to have found a private right of action exists for mere retention claims and, in fact, the only case to have squarely addressed the issue found no such private right of action exists, which is much more telling.

narrowly construed in favor of a defendant[10]—*does* apply to the VPPA because it is codified as a criminal statute and because it carries civil penalties. *Crandon v. United States*, 494 U.S. 152, 158 (1990) (finding the rule of lenity applies so long as the "governing standard is set forth in a criminal statute," and applying rule to civil action brought under a criminal statute). Here, there is no dispute the VPPA is codified as a criminal statute. Similarly, the Ninth Circuit has made clear the rule applies even to purely civil penalty statutes. *Leslie Salt Co.*, 55 F.3d at 1398 ("[T]he rule of lenity should counsel us to choose the interpretation least likely to impose penalties unintended by Congress. The rule of lenity ***has not been limited to criminal statutes***, particularly when the civil sanctions in question are punitive in character.") (citations omitted, emphasis added).

Plaintiffs also argue that any ambiguity should be resolved in their favor by broadly construing the VPPA to effectuate its purpose. (Resp. at 18-19.) But the purpose of the VPPA is to prevent *disclosure*, which simply supports the *Daniel* reading of the VPPA that limits private right of action to that core purpose of the VPPA. Moreover, Plaintiffs' cases dealing with state consumer fraud statutes and offensive debt-collection practices are inapposite as they involve affirmative misconduct not liability based on inaction. (*Id.* (citations omitted).) Furthermore, where a private right of action is at issue, the United States Supreme Court has made clear Congressional intent is narrowly construed. *See, e.g., Mallett,* 130 F.3d at 1249 (recognizing the Supreme Court's current implied right of action test only recognized statutory private right of actions where the Congressional intent was affirmatively demonstrated by the statutory "language, structure, and legislative history"); *see also Thompson*, 484 U.S. at 189 ("The federal judiciary will not engraft a remedy on a statute, ***no matter how salutary***, that Congress did not intend to provide.") (Scalia, J., concurring in the judgment) (quoting *California v. Sierra Club*, 451 U.S. 287, 297 (1981) (White, J.) (emphasis added).

---

[10] The rule of lenity is a cannon of statutory construction that counsels courts to choose the interpretation of an ambiguous statute that is most "lenient" or favorable to the defendant. *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1398 (9th Cir. 1995). The United States Supreme Court has made clear that the rule should only be applied where other cannons of construction fail to resolve the ambiguity, including looking to the "*structure, and history*" of the statute, which further supports the *Daniel* court's interpretation of the VPPA based on the structure of the statutory text. *See, e.g., United States v. Granderson*, 511 U.S. 39, 54 (1994) (citations omitted, emphasis added, applying rule of lenity).

III.    **Plaintiffs' Response Fails To Demonstrate That They Asserted *Any* Violation Of The Destruction Of Old Records Provision.**

A.      **Plaintiffs' allegations fail to address—let alone overcome—the point that any PII Redbox collected would have been collected for, among other reasons, marketing purposes, as expressly allowed by the VPPA.**

Even if theoretically there were a private right of action for a violation of the destruction of old records provision as discussed above, Plaintiffs' Response fails to demonstrate they have alleged *any* such violation here. (*Compare* Resp. at 15-18 *with* Op. Mem. at 9-12.) Plaintiffs fail to address the fact that, to the extent Redbox has Plaintiffs' PII (and it in no way concedes that it does), it would have collected that information for its own marketing purposes, among other permissive reasons, and would continue to use it for those purposes, thus meaning there was no violation under *any* reading of the VPPA. In response to this point, Plaintiffs merely argue that the Terms of Use ("TOU") and Privacy Policy that Redbox cited in its motion are not enforceable and that Plaintiffs claim they did not actually read those policies at the time of their rentals. (Resp. at 17-18.)

But that is a complete red herring, as Redbox cited the TOU and Privacy Policy simply to demonstrate the point that Redbox announces to consumers that any PII it collects would be collected for marketing purposes—Redbox was not seeking to (and need not) enforce the terms of the TOU to prevail on its motion.[11] It is perfectly appropriate for this Court to take judicial notice of the fact that Redbox publishes in those TOU, on its kiosks, and on its website, that it is collecting its customer's information for marketing purposes. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 944 n.3 (7th Cir. 2010) (taking judicial notice of the defendant's website) (citations omitted); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (noting that courts may take judicial notice that a website contains information because that fact is not subject to reasonable dispute).

Plaintiffs' opposition further fails to rebut the fact that the VPPA itself contemplates the collection and use of PII for marketing purposes, as explained in Redbox's opening memorandum.

---

[11] While wholly irrelevant to this motion, Redbox would note that it is well-established law that such online TOU are enforceable as contracts. *See, e.g., DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 915-16 (N.D. Ill. 2003) (enforcing similar online terms of use provided through a hyperlink to a website).

(Mem. at 12.)  The importance of the VPPA's recognition that video tape service providers can use PII for marketing purposes cannot be gainsaid.  After all, as recently recognized by the Supreme Court, marketing activities constitute a form of expression protected by the Free Speech Clause of the First Amendment.  *See Sorrell*, 131 S. Ct. 2653 (despite Vermont's interest in protecting medical privacy, striking down state law forbidding the sale, disclosure, and use of pharmacy records for marketing purposes).  Thus, Redbox's disclosure in its TOU that PII may be used for marketing purposes should come as no surprise to Plaintiffs.  As Plaintiffs allege, Redbox is in the business of offering low-priced, $1 per night video rentals to consumers from its nationwide network of automated, self-service kiosks.  (Compl. at ¶¶ 24, 28.)[12]  As an automated retailer, Redbox does not have direct interaction with its customers at the point of sale.  Thus, the right to engage in email and other electronic marketing communications with customers is of particular importance to Redbox.  Given that the VPPA clearly and expressly allows Redbox to collect and retain information for marketing purposes as expressly set forth in the statute and reflected in the legislative history of the VPPA, Plaintiffs cannot simply ignore this fact in attempting to concoct a purported claim against Redbox for improper retention.  Yet that is exactly what Plaintiffs have done here.

> **B.** **Plaintiffs' proffered reading of the VPPA that would require destruction "as soon as practicable" rather than within the one year statutory period is impermissibly vague.**

Even if Plaintiffs could allege Redbox was no longer using any PII for the purpose for which it was collected (which they cannot), Plaintiffs' claims would still fail because their proffered construction, which would require Redbox to destroy their PII "as soon as practicable" after it was no longer necessary, is impermissibly vague and inconsistent with the statutory text. (Resp. at 16-17.)  First, it ignores the immediately subsequent language that states "*but no later than one year* from the date the information is no longer necessary for the purpose for which it was collected . . . ." 18 U.S.C. § 2710(e) (emphasis added).  Second, as Redbox explained in its opening memorandum, the "as soon as practicable" reading that Plaintiffs' propose would be

---

[12] Plaintiffs' Amended Consolidated Complaint (ECF No. 27) ("Compl.").

impermissibly and unconstitutionally vague.  (Op. Mem. at 13-15.)

Plaintiffs only response is to argue that "practicable" has a plain dictionary definition: "capable of being done or accomplished."  (Resp. at 17 (citation omitted).)  But that response merely demonstrates Redbox's point because it is difficult to imagine any workable test for determining whether a video tape service provider was "capable" of the destruction of old records by a certain date, and certainly Plaintiffs fail to offer any such test.  In fact, Plaintiffs appear to read this language to require *instantaneous* destruction of records—on a customer-by-customer, transaction-by-transaction basis—the moment after the 90 day window passes without in any way explaining how such a feat is "practicable," especially where Redbox is serving "millions of consumers."  (Compl. at ¶ 4.)  Rather than supporting its cause, Plaintiffs' argument simply undercuts it, and further demonstrates that this language is impermissibly vague.  (Resp. at 17.)

Furthermore, as Redbox explained in its opening memorandum, Plaintiffs' proposed interpretation would raise constitutional concerns that can be avoided by simply construing the statutory text to mean what it says:  that a video tape service provider must destroy PII within one year after it is no longer necessary for the purpose for which it was collected, because Plaintiffs' claims clearly fail under that plain reading of the statutory language.[13]  18 U.S.C. § 2710(e); Op. Mem. at 13-15 (citing, *e.g., Lyng v. Northwest Indian Cemetery Prot. Ass'n*, 485 U.S. 439, 445-446 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.")).

> **C.**   **Plaintiffs' claims also fail because they do not allege Redbox is no longer using PII for any other reasons for which such information may have been collected, and Plaintiffs' new allegations demonstrate that PII is "necessary" for up to 10 years even under Plaintiffs' flawed theory.**

Plaintiffs' position presupposes that the only valid reason why Redbox might collect and

---

[13] Plaintiffs have also added a new named Plaintiff, Jiah (or Jia) Chung, who they allege had a rental that would place her outside of the one-year statutory period.  (ECF No. 27 at ¶ 38 (alleging "Chung's transaction was completed more than one (1) year ago").)    The fact Plaintiffs felt such an addition was necessary simply underscores that even Plaintiffs' counsel recognizes construing the VPPA as they propose is problematic.  Moreover, Plaintiffs fail to allege that the rental alleged was the *only* such rental or the final rental.  If Ms. Chung rented again then of course that would restart the statutory period even under Plaintiffs' theory.

retain such information is to process refunds during a 90-day period. As set forth in Section III.A above, as an automated retailer, Redbox would naturally view its right to use PII to engage in email and other electronic marketing communications as significant, and Plaintiffs offer no explanation as to why Redbox should expect to be stripped of that right 90 days from the date of a transaction. Plaintiffs also ignore the myriad other purposes why Redbox and other video tape service providers might wish or need to retain such information for a longer period of time, including relative to refunds or other related collection activities.

For instance, Plaintiffs claim that it is Redbox's policy to now allow refunds after 90 days. (Compl. at ¶ 56.) This allegation, however, fails to address the need for such information in the event a consumer disputes a charge or sues Redbox for breaches of the rental contract after that period of time. Such claims, under Illinois law, could be subject to a ten-year statute of limitations. *See* 735 ILCS 5/13-206.[14] Conversely, Redbox certainly has the right to bring a claim to collect if a consumer's credit or debit card had insufficient funds upon the return of a rented DVD. In that case, Illinois law would provide Redbox the right to pursue recovery during that same time frame.

Additionally, as alleged by Plaintiffs, Redbox is headquartered in Illinois and does business throughout the United States. (Compl. at ¶ 11.) Accordingly, Redbox pays sales and use taxes in a variety of jurisdictions, including Illinois. Illinois law requires businesses to preserve and retain records reflecting its receipts for three years. *See* 86 Ill. Admin. Code 130.815(c). Other states have more onerous provisions, allowing state departments of revenue the right to examine returns and to recover sales and use taxes four years after the filing of a return. *See, e.g.*, Ariz. Rev. Stat. Ann. § 42-1104(A); Ky. Rev. Stat. Ann. § 139.620(1); Md. Code Ann. Tax-Gen. § 13-1102(a); Ohio Rev. Code Ann. § 5739.16(A); Wis. Stat. § 77.59(3). The need to retain PII for tax purposes

---

[14] While Redbox's TOU specifically limits the time to file such claims to a one year period (ECF No. 24-3 at 4), Plaintiffs have affirmatively asserted that they are not bound by the TOU (Compl. at ¶ 61). As noted above, the question of whether the TOU is enforceable is not relevant to this Motion, although Plaintiffs' assertions they are not bound by the TOU are based on factually flawed premises and are also legally wrong. In any event, the fact that Plaintiffs are attempting to escape the TOU further undermines Plaintiffs' theory as it shows that Plaintiffs' PII is "necessary" for even refund and collection activities for not only more than 90 days, but more than one year and up to 10 years under the Illinois statute of limitations.

is not hypothetical, it arose in one of the very cases that Plaintiffs cited in their Response. *Amazon.com LLC*, 758 F. Supp. 2d at 1158-60 (discussing the North Carolina Department of Revenue's demand for information, including PII, for the past seven years relative to its tax audit of Amazon.com).

Finally, even though they conveniently allege that they are "former" customers, Plaintiffs' claims are based on the broad assumption that all of the other "millions of consumers" who rent from Redbox no longer wish to be considered customers after 90 days. (This assumption might disappoint a family who rents videos during the summer recess from school, but then takes a break until the Christmas holidays, and many such customers may want Redbox to retain their PII indefinitely.) Auto dealers no doubt consider persons who return every three years to lease a new car to still be "customers," and relish the opportunity to market to and communicate with those customers in the meantime. Redbox and its customers should be granted no less consideration.

Plaintiffs' arguments defy both common sense and the language of the statute they wish to invoke. Their arguments should be rejected.

## IV. Plaintiffs' After-The-Fact Reliance On The Stored Communications Act ("SCA") As A Supposed Source Of Their Right Of Action Simply Demonstrates Plaintiffs Recognize They Have No Right Of Action Under The VPPA.

Recognizing that their claims under the VPPA are doomed, Plaintiffs now attempt to argue that the SCA—instead of the VPPA—provides a right of action for mere retention of data. (Resp. 19-20.) As an initial matter, nowhere in their original Complaint, their Consolidated Complaint, or their Amended Consolidated Complaint do Plaintiffs allege a violation of the SCA, nor do Plaintiffs allege the that Redbox acted with a "knowing or intentional state of mind," which is required to state a claim for a violation of the SCA. 18 U.S.C. § 2707(a). "A party may not use a responsive brief to amend its complaint." *Implant Innovations, Inc. v. Nobelpharma AM*, No. 93 C 7489, 1995 WL 562092, at *5 (N.D. Ill. Sept. 14, 1995) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *see also Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) (same). Thus, Plaintiffs' reliance on the SCA should be rejected out of hand because it is not pled.

But more importantly, the purpose of the SCA has nothing to do with the issues in this

case, and it is equally clear that Congress did not intend a private right of action to exist for mere retention of data, just like with the VPPA. In fact, like the DPPA, the SCA contains **no** destruction of old records provision at all. Congress enacted the SCA in part to protect individuals from the "growing problem of unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public." S. Rep. No. 99-541, at 35; 1986 U.S.C.C.A.N. 3555, 3589. The SCA "aims to prevent hackers from obtaining, altering or destroying certain stored electronic communications." *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 507 (S.D.N.Y. 2001) (citing *Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F. Supp. 2d 817, 820 (E.D. Mich. 2000)). In addition, the SCA contains very specific provisions concerning the prohibition of disclosures by electronic communication service providers. *See* 18 U.S.C. §§ 2702-2703. From the text of the statute and the legislative history, it is clear that the SCA was enacted with the intention of preventing unlawful access to, and disclosure of, electronic communications. Plaintiffs have not -- and cannot -- demonstrate that a private right of action for mere retention of data was within the ambit of Congress's intent in enacting the SCA.

It is true that Section § 2707 of the SCA does provide for a private right of action for "any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind . . . ." It is also true that the VPPA is part of the same chapter as the SCA. However, the SCA was enacted in 1986, two years before the VPPA was enacted. If Congress actually intended the SCA to provide a cause of action for a violation of the VPPA, one wonders why the VPPA would contain a private right of action of its own. If anything this inconsistency simply demonstrates that Congress made several errors in enacting the VPPA, and the legislative history should be used to determine their true intent. Furthermore, if the SCA actually provides for a cause of action for the VPPA, then that means Congress would have purposefully created two private rights of actions for disclosure violations of the VPPA, with inconsistent remedies. *Compare* 18 U.S.C. § 2707(c) (providing for a minimum of $1,000 for a SCA violation) *with* 18 U.S.C. § 2710(c)(2)(A) (providing for "actual damages not less than liquidated damages in an amount of $2,500"). This cannot be the case, particularly when the

private right of action providing for *lower* monetary remedies has a *higher* burden of requiring proof of a "knowing or intentional state of mind." Although a court must give words their plain meaning when interpreting statutes, when doing so would lead to an absurd result, as in the case here, a literal construction is inappropriate. *Smith v. Bowen*, 815 F.2d 1152, 1154 (7th Cir. 1987) ("A literal construction is inappropriate if it would lead to absurd results or would thwart the obvious purposes of the statute."). Plaintiffs cannot seriously maintain that the SCA provides an additional cause of action for the VPPA given the separate enactment of the two statutory schemes, and the incongruous remedy provisions that would result if the two statutes are grouped together. Thus, once again, the more appropriate statutory construction is to look at the statutory scheme as a whole rather than relying on stray and selective language taken out of context, as seems to be Plaintiffs' modus operandi.

## CONCLUSION

In sum, and for all the reasons explained above, Defendant Redbox Automated Retail, LLC respectfully requests that this Court enter an Order granting its motion to dismiss and dismissing Plaintiffs' claims with prejudice.

Dated:  July 30, 2011                                  Respectfully submitted,

                                                                      /s/ Anthony T. Eliseuson
                                                                      One of the attorneys for Defendant Redbox
                                                                      Automated Retail, LLC

Donna J. Vobornik (ARDC #6195767)
Natalie J. Spears (ARDC #6230320)
Anthony T. Eliseuson (ARDC #6277427)
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@snrdenton.com
natalie.spears@snrdenton.com
anthony.eliseuson@snrdenton.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony T. Eliseuson, an attorney, hereby certify that on July 30, 2011, I electronically filed the preceding with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

- **Ari J. Scharg**
  ascharg@edelson.com

- **William C. Gray**
  wgray@edelson.com

- **Rafey S. Balbanian**
  rbalabanian@edelson.com

- **Joseph J. Siprut**
  jsiprut@siprut.com

/s/Anthony T. Eliseuson
Anthony T. Eliseuson