**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN STERK and JIAH CHUNG,** | ) | |
| **individually and on behalf of** | ) | |
| **all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 11 C 1729** |
| | ) | |
| **REDBOX AUTOMATED RETAIL, LLC,** | ) | |
| **d/b/a Redbox,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Blake Boesky and Kevin Sterk filed suit on behalf of a putative class against

Redbox Automated Retail, LLC for violations of a provision of the Video Privacy

Protection Act (VPPA), specifically 18 U.S.C. § 2710(e). Redbox moved to dismiss the

complaint for failure to state a claim.

After the Court had set a briefing schedule on Redbox's motion to dismiss,

plaintiffs filed an amended complaint in which they dropped Boesky as a plaintiff and

replaced him with Jiah Chung. The amended complaint includes a claim for violation of

18 U.S.C. § 2710(e) that is, for all practical purposes, identical to the claim in the prior

version of the complaint. The amended complaint also includes a new claim under a

separate provision of the VPPA, 18 U.S.C. § 2710(b).

Redbox moved to dismiss the amended complaint, including the new VPPA

claim. All parties agreed that the amended complaint made no material changes to the

claim under subsection 2710(e).  For this reason, the Court directed the parties to proceed with briefing on Redbox's original motion to dismiss and put on hold further briefing regarding the claim under subsection 2710(b).

For the reasons stated below, the Court denies Redbox's motion to dismiss plaintiffs' claim under 18 U.S.C. § 2710(e).

## Facts

In deciding a motion to dismiss, the Court accepts the facts alleged in the plaintiff's complaint as true and draws reasonable inferences in plaintiff's favor.  *E.g.*, *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010).  The following facts are taken from the amended complaint.

Redbox rents digital video discs (DVDs) directly to consumers through more than 30,000 automated, self-service kiosks located throughout the United States.  A customer pays for the rental by swiping a credit or debit card at the kiosk and manually entering a zip code.  The typical charge for a rental is $1 or $2.  The customer is required to return the DVD to a Redbox kiosk by 9 p.m. the following day.  If the customer fails to do so, Redbox charges an additional rental fee for each day the DVD is not returned.  If a customer does not return a DVD within twenty-five days of the rental date, Redbox charges the customer's credit or debit card the cost of the DVD, and at that point the customer owns the DVD.  Plaintiffs also allege that Redbox does not provide refunds for charges over ninety days old.

According to the complaint, Redbox maintains a digital record system that stores its customers' credit or debit card information, billing address, and video programming viewing histories.  This includes, according to plaintiffs, information regarding "every

2

DVD that the customer has ever rented or purchased from Redbox, as well as information which identifies the customer as having requested or obtained specific video materials or services." Am. Compl. ¶32.

Plaintiffs allege that at the time relevant to this suit, Redbox did not obtain its customers' consent to retain their "personally identifiable information" (i.e., billing and viewing history information). They allege that although Redbox modified its kiosks to display a link to a "terms of use and privacy policy" after the suit was filed, prior to that time "there were (a) no disclosures whatsoever on the kiosks, or (b) disclosures that were intentionally buried so that customers would not see them, let alone consent to their terms." *Id.* ¶ 27.

According to plaintiffs, Redbox stores and maintains its customers' personally identifiable information "for an indefinite period of time." *Id.* ¶ 31. They allege that because DVD transactions by Redbox customers are necessarily completed within twenty-five days of the rental date, and because the company does not provide refunds for charges that are over ninety days old, Redbox's retention of such information for more than ninety days violates the VPPA. *Id.* ¶ 33.

Plaintiffs allege that Sterk used a Redbox kiosk to rent DVDs on February 22, 2010 and that he returned these DVDs on February 24, 2010. Plaintiffs allege that even though this transaction was completed more than one year ago, Redbox continues to store and maintain Sterk's billing information and video viewing history. Chung rented a DVD from a Redbox kiosk on November 27, 2009 and returned it in timely fashion. She likewise alleges that although the transaction was completed more than one year ago, Redbox continues to store and maintain her billing information and

3

video viewing history.

As indicated earlier, plaintiffs allege that Redbox's retention of their information violates the VPPA, specifically 18 U.S.C. § 2710(e). In its motion to dismiss, Redbox argues that no private right of action exists for a violation of subsection 2710(e) and that even if there is a private right of action, plaintiffs have failed to state a claim for violation of the statutory provision.

## Applicable Statute

Because the parties' arguments concerning the private right of action issue involve the wording and structure of section 2710, the Court quotes that section in full:

§ 2710. Wrongful disclosure of video tape rental or sale records

(a) Definitions.--For purposes of this section–

> (1) the term "consumer" means any renter, purchaser, or subscriber of goods or services from a video tape service provider;

> (2) the term "ordinary course of business" means only debt collection activities, order fulfillment, request processing, and the transfer of ownership;

> (3) the term "personally identifiable information" includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider; and

> (4) the term "video tape service provider" means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials, or any person or other entity to whom a disclosure is made under subparagraph (D) or (E) of subsection (b)(2), but only with respect to the information contained in the disclosure.

(b) Video tape rental and sale records.--

> (1) A video tape service provider who knowingly discloses, to any

4

person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d).

(2)  A video tape service provider may disclose personally identifiable information concerning any consumer--

(A)  to the consumer;

(B)  to any person with the informed, written consent of the consumer given at the time the disclosure is sought;

(C)  to a law enforcement agency pursuant to a warrant issued under the Federal Rules of Criminal Procedure, an equivalent State warrant, a grand jury subpoena, or a court order;

(D)  to any person if the disclosure is solely of the names and addresses of consumers and if--

(i)  the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure; and

(ii)  the disclosure does not identify the title, description, or subject matter of any video tapes or other audio visual material; however, the subject matter of such materials may be disclosed if the disclosure is for the exclusive use of marketing goods and services directly to the consumer;

(E)  to any person if the disclosure is incident to the ordinary course of business of the video tape service provider; or

(F)  pursuant to a court order, in a civil proceeding upon a showing of compelling need for the information that cannot be accommodated by any other means, if--

(i)  the consumer is given reasonable notice, by the person seeking the disclosure, of the court proceeding relevant to the issuance of the court order; and

(ii)  the consumer is afforded the opportunity to appear and contest the claim of the person seeking

the disclosure.

If an order is granted pursuant to subparagraph (C) or (F), the court shall impose appropriate safeguards against unauthorized disclosure.

(3) Court orders authorizing disclosure under subparagraph (C) shall issue only with prior notice to the consumer and only if the law enforcement agency shows that there is probable cause to believe that the records or other information sought are relevant to a legitimate law enforcement inquiry. In the case of a State government authority, such a court order shall not issue if prohibited by the law of such State. A court issuing an order pursuant to this section, on a motion made promptly by the video tape service provider, may quash or modify such order if the information or records requested are unreasonably voluminous in nature or if compliance with such order otherwise would cause an unreasonable burden on such provider.

(c) Civil action.--

(1) Any person aggrieved by any act of a person in violation of this section may bring a civil action in a United States district court.

(2) The court may award–

(A) actual damages but not less than liquidated damages in an amount of $2,500;

(B) punitive damages;

(C) reasonable attorneys' fees and other litigation costs reasonably incurred; and

(D) such other preliminary and equitable relief as the court determines to be appropriate.

(3) No action may be brought under this subsection unless such action is begun within 2 years from the date of the act complained of or the date of discovery.

(4) No liability shall result from lawful disclosure permitted by this section.

(d) Personally identifiable information.--Personally identifiable information obtained in any manner other than as provided in this section shall not be received in evidence in any trial, hearing, arbitration, or other proceeding

in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision of a State.

(e)  Destruction of old records.--A person subject to this section shall destroy personally identifiable information as soon as practicable, but no later than one year from the date the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under subsection (b)(2) or (c)(2) or pursuant to a court order.

(f)  Preemption.--The provisions of this section preempt only the provisions of State or local law that require disclosure prohibited by this section.

18 U.S.C. § 2710.

## Discussion

### 1.    Private right of action for violations of 18 U.S.C. § 2710(e)

Redbox argues that there is no private right of action for violation of the statutory requirement of "destruction of old records" (subsection 2710(e)) and that the VPPA's provision authorizing private civil actions (subsection 2710(c)) is limited to suits for violation of the statute's disclosure prohibition (subsection 2710(b)).  Redbox cites what it regards as the plain meaning of the VPPA given its structure, the statute's legislative history, and the Sixth Circuit's decision in *Daniel v. Cantrell*, 375 F.3d 377 (6th Cir. 2004).  As best as the Court can tell, *Daniel* is the only reported decision that deals directly with whether there is a private right of action for a violation of subsection 2710(e).

Redbox points out that the only provision of section 2710 that contains liability language is the unlawful disclosure provision, subsection 2710(b).  That provision states that "[a] video tape service provider who knowingly discloses, to any person,

personally identifiable information . . . shall be liable to the aggrieved person." No similar language appears in subsection 2710(e), the destruction-of-information provision upon which Sterk and Chung base their claims.

Subsection 2710(b), however, is not the provision of the VPPA that authorizes bringing a civil action. That authorization is contained in subsection 2710(c). Redbox offers no reason, and no principle of statutory construction, that requires Congress to say twice that a party may bring a suit for violation of a statute. If subsection 2710(c) permits suits for violation of subsection 2710(e), then the fact that subsection 2710(e) does not repeat that authorization is of no consequence.

Subsection 2710(c)'s plain language makes it clear that a plaintiff can bring a private suit for violation of any of the requirements and prohibitions contained in section 2710. Specifically, subsection 2710(c) states that a person "aggrieved by any act of a person *in violation of this section*" may file suit. The reference to "this section" is a clear reference to the entirety of section 2710. It does not limit the right to bring suit to cases involving violations of subsection 2710(b).

The Supreme Court has stated that "Congress ordinarily adheres to a hierarchical scheme in subdividing statutory sections." *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60 (2004). As the Supreme Court noted in that case, this hierarchy is set forth in drafting manuals prepared by the legislative counsel's offices of the House of Representatives and the Senate. As described by the Supreme Court in *Koons Buick Pontiac GMC*, these manuals state:

The House manual provides:

To the maximum extent practicable, a section should be broken into-

8

(A) subsections (starting with (a));

(B) paragraphs (starting with (1));

(C) subparagraphs (starting with (A));

(D) clauses (starting with (i)) ...."

House Legislative Counsel's Manual on Drafting Style, HLC No. 104-1, p. 24 (1995).

The Senate manual similarly provides:

A section is subdivided and indented as follows:

(a) SUBSECTION.-

(1) PARAGRAPH.-

(A) SUBPARAGRAPH.-

(i) CLAUSE.-

Senate Office of the Legislative Counsel, Legislative Drafting Manual 10 (1997).

*Koons Buick Pontiac GMC*, 543 U.S. at 60-61.[1]

In drafting section 2710, Congress carefully adhered to this hierarchical scheme (with a single possible exception, noted below). The statute contains, in subsection (a), definitions that apply "for purposes of *this section.*" 18 U.S.C. §2710(a) (emphasis added). This is a clear reference to the entirety of section 2710. One of the definitions

---

[1] The VPPA was enacted in 1988, prior to the dates of the particular drafting manuals cited in *Koons Buick Pontiac GMC*. But as the Supreme Court noted in that case, the 1995 drafting manuals "are consistent with earlier guides." *Koons Buick Pontiac GMC*, 543 U.S. at 467 n.4 (citing authorities dating back to 1961). Indeed, in *Koons Buick Pontiac GMC*, as in the present case, the Court was dealing with a statute that was adopted prior to the particular drafting manuals cited in the text. The Court still relied on those materials in its analysis.

in subsection (a) refers to disclosures "made under *subparagraph (D) or (E) of subsection (b)(2)."* *Id.* § 2710(a)(4) (emphasis added). This use of the terms subparagraph and subsection is consistent with the standard hierarchical terminology described in *Koons Buick Pontiac GMC.* The VPPA's disclosure prohibition, quoted above, similarly uses the term "subsection" in a textbook-accurate way when it says that a provider that violates the prohibition is liable "for the relief provided in *subsection (d)*." *Id.* § 2710(b)(1). And the list goes on, with a number of additional references to particular "subparagraph[s]," "this section," "this subsection," and particular "subsections." *Id.* §§ 2710(b)(2)(F), 2710(b)(3), 2710(c)(1), 2710(c)(3), 2710(d), 2710(e) & 2710(f).

All but (possibly) one of these references uses the particular hierarchical term consistently with its commonly understood meaning as described in the drafting manuals referenced above. The single possible exception is found in the disclosure prohibition contained in subsection 2710(b). Paragraph (3) of that subsection, also quoted earlier, reads as follows:

> (3) Court orders authorizing disclosure under subparagraph (C) shall issue only with prior notice to the consumer and only if the law enforcement agency shows that there is probable cause to believe that the records or other information sought are relevant to a legitimate law enforcement inquiry. In the case of a State government authority, such a court order shall not issue if prohibited by the law of such State. *A court issuing an order pursuant to this section*, on a motion made promptly by the video tape service provider, may quash or modify such order if the information or records requested are unreasonably voluminous in nature or if compliance with such order otherwise would cause an unreasonable burden on such provider.

18 U.S.C. § 2710(b)(3) (emphasis added). Redbox contends that this reference to "this

section" cannot mean the entirety of section 2710.  It follows, Redbox argues, that Congress did not consistently use the term "section" in a manner consistent with the standard hierarchy referenced earlier and that this supports Redbox's contention that subsection 2710(c)'s reference to "section" likewise does not refer to the entirety of section 2710.

The Court disagrees.  First of all, it is not so clear that Congress's use of "section" in 18 U.S.C. § 2710(b)(3) deviates from the standard drafting terminology. The statute's destruction-of-records provision, subsection 2710(e), says that information is to be destroyed by a specified time if "there are not pending requests or orders for access to such information under subsection (b)(2) or (c)(2) or pursuant to a court order."  18 U.S.C. § 2710(e).  Because this separate provision of section 2710 also refers to court orders, the use of the phrase "an order pursuant to this section" in 18 U.S.C. § 2710(b)(3) is likely another textbook-accurate use of the term "section." Second, even if Redbox is right that Congress misused the term "section" in subsection 2710(b), that particular misuse would be readily apparent on its face and thus would not suggest that other uses of the term are ambiguous.

Redbox notes that this Court has recognized that "a word that is clear by itself – including 'section' – may sometimes be rendered ambiguous in context." *Tremble v. Town & Country Credit Corp.*, No. 05 C 2625, 2006 WL 163140, at *2 (N.D. Ill. Jan. 18, 2006).  That is no doubt true.  One example is the statute addressed in *Graham County Soil & Water Conservation District v. United States*, 545 U.S. 409 (2005).  In that case, the Supreme Court considered whether the statute of limitations in a particular provision of the False Claims Act (FCA) applied to certain types of suits under a different

11

provision of the FCA.  The limitations provision, 31 U.S.C. § 3731(b)(1), provided that

"[a] civil action under section 3730 may not be brought . . . more than 6 years after the

date on which the violation of section 3729 is committed."  The plaintiff filed suit under

31 U.S.C. § 3730(h), which prohibits retaliation by an employer against an employee for

assisting in an FCA investigation or prosecution.  The plaintiff argued that actions under

section 3730(h) arise "under section 3730" and thus that it was clear that the six-year

limitations period governed.  The Supreme Court said that "the statute is more complex

than this argument supposes.  Statutory language has meaning only in context, and §

3731(b)(1), read in its proper context, does not govern § 3730(h) actions for retaliation."

 *Graham County*, 545 U.S. at 415.  In particular, the Court relied on the fact that the

limitations provision itself, section 3731(b)(1), expressly made "the violation of section

3729" as the trigger for accrual of a claim.  The Court determined that this reference to

section 3729, the provision of the FCA concerning the submission of false claims, "cast[

] doubt on whether § 3731(b)(1) specifies a limitations period for retaliation actions.  For

even a well-pleaded retaliation complaint need not allege that the defendant submitted

a false claim, leaving the limitations period without a starting point if § 3731(b)(1) is

applicable."  *Id.* at 416.  This, the Court concluded, rendered the limitations provision

ambiguous. The Court went on to note that a separate provision of section 3730,

specifically subsection 3731(c), made reference to "action[s] brought under section

3730" in a way that made it clear that Congress there used the phrase "section 3730" to

apply only to a subset of actions under section 3730, specifically, those under 31

U.S.C. § 3730(a) or (b).  *Id.* at 418.  For these and other reasons, the Court concluded

that the six year limitations period did not apply to retaliation claims under subsection

12

3730(h) even though they are part of the "section" to which the limitations period on its face applied.

There is no similar ambiguity, indeed there is no ambiguity at all, in section 2710. Unlike in *Graham County*, nothing within the text of subsection 2710(c) suggests that Congress intended anything other than the standard meaning of "section" when it conferred a right to bring a civil suit for "violation[s] of this section." As the Court has explained, the statute is quite careful in its accurate usage of the standard statutory hierarchy of "section," "subsection," and "subparagraph."

Unlike in *Graham County*, in which the Supreme Court determined that the term "section" was used in an ambiguous way because the text "literally read, admits of two plausible interpretations," *Graham County*, 545 U.S. at 419 n.2, Congress used the term in subsection 2710(c) and elsewhere in the VPPA in a manner consistent with its ordinary meaning. Specifically, with the single possible exception noted earlier, Congress consistently used the term "section" in portions of the statute other than subsection 2710(c) to apply to the *entirety* of section 2710, not just to some subset of that section. In particular, the statute's definitions are established "[f]or purposes of *this section*," 18 U.S.C. § 2710(a)(1); the destruction of records provision applies to persons "subject to *this section*," *id.* § 2710(e) (emphasis added); and the statute's preemption provision likewise refers to "[t]he provisions of *this section*," *id.* § 2710(f) (emphasis added).

Each of these references would be meaningless unless the term "section" is understood to refer to the entirety of section 2710. Thus accepting Redbox's proposed

construction would require the Court to conclude that Congress used the terms section, subsection, and subparagraph precisely in accordance with their standard meaning every time it used those terms within the statute, *except* in subsection 2710(c).  It would also require a conclusion that even though Congress used the term "subsection" accurately in subsection 2710(c) itself, *see* 18 U.S.C. § 2710(c)(3), it used another hierarchical term incorrectly earlier in that same subsection.  Nothing in *Graham County* or the other statutory construction cases on which Redbox relies supports construing subsection 2710(c) this way.[2]

The Seventh Circuit has emphasized the presumption "that Congress intended the same terms used in different parts of the same statute to have the same meaning." *Belom v. National Futures Ass'n*, 284 F.3d 795, 798 (7th Cir. 2002); *see also Perry v. First Nat'l Bank*, 459 F.3d 816, 820 (7th Cir. 2006) (relying on *Belom* to conclude "that the phrase 'this section' [in 15 U.S.C. § 1681m(g)] unambiguously refers to section 1681m as a whole").  Interpreting the use of "section" in subsection 2710(c) as a reference to section 2710 in its entirety is consistent with this presumption.  The plain meaning of the statute supports a conclusion that Congress created a private right of action for a video provider's unlawful retention of personally identifiable information.

Redbox also argues that the location of the civil action provision supports its argument that subsection 2710(c) only applies to the subsection that precedes it – the unlawful disclosure provision, subsection 2710(b).  If the civil action provision were to

---

[2]  Indeed, in *Tremble*, the decision by the undersigned judge that Redbox cites, the Court determined that the statute at issue there used the term "section" consistent with its ordinary meaning and that the context of the statute "[did] not render the statutory provision the least bit unclear."  *Tremble*, 2006 WL 163140, at *2.  The same is true here.

apply to all of the requirements and prohibitions in section 2710, Redbox argues, it would appear at the end of the section rather than in the middle.

This is, in significant part, what the Sixth Circuit concluded in *Daniel v. Cantrell*. That case largely involved claims that the defendants had violated the VPPA's disclosure prohibition, subsection 2710(b). The court first decided that the defendants were not proper parties to a claim for violation of that provision. After concluding its discussion of subsection 2710(b), the court stated that "[i]t is unclear to this court whether Daniel is asserting a claim under 18 U.S.C. § 2710(d)," but it decided "in the interests of completeness [to] explain why such a claim must fail." *Daniel*, 375 F.3d at 384. The court reasoned that "only § 2710(b) can form the basis of liability," and that this "is plain because only section (b) includes language relating to liability." *Id.* The court also stated that "the structure of the statute makes it clear that a civil action may be brought based on only a violation of section (b)," stating that if the "later sections [i.e., subsections (d) and (e)] were to be a basis for liability, it would make sense that the section on civil actions would come at the end of the statute, rather than preceding those sections." *Id.* (The court noted in a footnote that if a consumer could prove harm resulting from a failure to destroy records in violation of subsection (c), "he could presumably bring a negligence action" against the service provider. *See id.* at 384 n.5.) The court did not address *Koons Buick Pontiac GMC* or the principles discussed there. Indeed, the court cited no authority for any of the purported rules of statutory construction on which it relied.

With great respect for the Sixth Circuit and the judges on the panel in *Daniel*, this

Court finds the reasoning of that case unpersuasive. The court seems to have relied on a rule of sequential hierarchy – for want of a better term – for which it did not cite, and Redbox does not cite, any authority. The only case that Redbox cites in this regard, *Perry*, stands for no such rule or principle. *Perry* concerned a provision of the Fair Credit Reporting Act (FCRA) that eliminated civil liability for certain types of violations, 15 U.S.C. § 1681m(h). The Seventh Circuit discussed the standard designations for subdividing statutes and concluded that Congress had used these standard designations in section 1681m. *Perry*, 459 F.3d at 820. The court then addressed an argument made by the plaintiff:

> Perry argues that the placement of § 1681m(h)(8) within the FCRA demonstrates that it applies only to § 1681m(h). Paragraph (8) is the only part of subsection 1681m(h) that concerns enforcement. According to Perry, if Congress intended § 1681m(h)(8) to apply to all of § 1681m, it would have made § 1681m(h)(8) into its own subsection, § 1681m(i). We are not persuaded. It was logical for Congress to place § 1681m(h)(8) where it did, at the very end of the statute. It is an enforcement provision that applies to the entire preceding section of the statute. It is also the only subdivision of § 1681m that concerns enforcement.

*Id.* at 821. In short, the court *rejected* an argument that the statute should be construed based on where the particular provision at issue had been placed. In noting that it was logical to place the enforcement provision at the end of the statute because it concerned the entire preceding section, the court in no way established or even suggested a principle that an enforcement provision does not, or likely does not, cover an entire statutory section unless it is placed at the end of that section. That is not a viable reading of *Perry*. In sum, the Court concludes that the meaning of "section" does not change because it is used in a provision contained in the middle of a statutory section, rather than at the end.

16

Redbox also contends that the legislative history of VPPA supports the proposition that the civil action provision applies only to violations of the statute's disclosure prohibition. According to the Senate Report on the VPPA, the purpose of the statute is "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." S. Rep. No. 100-599, at 1 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-1. The purpose of the destruction-of-records requirement in subsection 2710(e), the Senate Report states, is "to reduce the chances that an individual's privacy will be invaded, by requiring the destruction of information in an expeditious fashion." *Id*. at 15. The report specifically refers to the fact that the VPPA imposes civil liability for violation of the statute's disclosure prohibition, but it is silent regarding whether there is civil liability for violation of the statute's information destruction requirement. *See id.* at 13.

The legislative history may refer only to suits for violations of the VPPA's disclosure prohibition, but it in no way rules out a reading of section 2710(c) that permits a suit for violation of the statute's destruction-of-records requirement. In any event, the Court sees no appropriate basis to resort to the legislative history as a tool of construction for subsection 2710(c). As the Supreme Court has repeatedly made clear, "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005). To put it another way, "inquiry [regarding the meaning of a statute] must cease if the statutory language is unambiguous and the statutory scheme is

17

coherent and consistent." *Ioffe v. Skokie Motor Sales, Inc.*, 414 F.3d 708, 711 (7th Cir. 2005) (internal quotation marks and citations omitted). That is the case here. The legislative history that Redbox cites in no way alters or detracts from Congress's clear and unambiguous use of the term "section" in subsection 2710(c).

Finally, Redbox argues that any ambiguity in the VPPA must be resolved in its favor under the rule of lenity. The Court questions whether this rule even applies in this context. The rule of lenity typically applies only to criminal statutes. Redbox points out that the VPPA includes provisions imposing criminal liability and argues that the rule of lenity applies for that reason. In the present context, however, the Court is dealing not with the scope of any statutory prohibition or requirement, but rather with the construction of a provision allowing private civil actions. Redbox cites no authority applying the rule of lenity in that context.

Assuming the rule of lenity applies, the Supreme Court has cautioned that it provides a governing rule of statutory construction only if, "after seizing everything from which aid can be derived . . . [the court] can make no more than a guess as to what Congress intended." *Reno v. Koray*, 515 U.S. 50, 65 (1995) (internal quotation marks and citations omitted). A statute is not considered ambiguous for purposes of application of the rule of lenity simply because it is possible to articulate a narrower construction. *Moskal v. United States*, 498 U.S. 103, 108 (1990). Nor is the existence of a division in judicial interpretation sufficient to trigger the application of the rule. *Id.* In the present case, there is certainly no basis to say that the court can make "no more than a guess" about what Congress intended. Indeed, as the Court has concluded, the meaning of "section" in the VPPA is clear and unambiguous. For this reason, there is

18

no basis to apply the rule of lenity.

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2350 (2009). Congress used the term "section" in subsection 2710(c) in a way consistent with its established meaning – to cover the entirety of section 2710. The Court concludes that the plain meaning of subsection 2710(c) entitles plaintiffs to sue under that provision for Redbox's alleged violations of subsection 2710(e).

**2.      Failure to state a claim**

To survive a motion to dismiss, a plaintiff "must plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Redbox argues that even if a private right of action exists for improper retention of personally identifiable information, Sterk has failed to state a plausible claim under § 2710(e).[3]

In his complaint, Sterk alleges that Redbox collects identifying information for purposes of collecting debts and providing refunds. He alleges that Redbox does not give refunds after ninety days have passed from the rental date. Sterk alleges that once this ninety-day period expires, Redbox no longer needs to retain a customer's information. He contends that as a result, to comply with subsection 2710(e), Redbox

---

[3] Because of the way in which briefing has been conducted, Redbox did not in the present motion address the adequacy of Chung's claim, which had not yet been asserted. Her claim, however, is indistinguishable from Sterk's for purposes of the Rule 12(b)(6) analysis.

must destroy a customer's information "as soon as practicable" after the ninety-day period expires. Redbox argues that the VPPA allows it to retain a customer's identifying information for "one year from the date the information is no longer necessary for the purpose for which it was collected." *Id.* § 2710(e). It contends that even assuming it collects customer information only for the purpose of recouping late fees, this one-year period had not ended at the time Sterk filed suit.

Redbox's reading of subsection 2710(e) assumes that a video provider always has one year to destroy a customer's information and thus reads the phrase "as soon as practicable" out of the statute. "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks and citation omitted); *see also United States v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) ("We will not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous.").

Redbox also argues that it collects customer information for marketing and advertising purposes, which is allowed under the VPPA "if the video tape service provider has provided the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure." 18 U.S.C. § 2710(b)(2)(D). Redbox contends that its Terms of Use and Privacy Policy provided a method for customers to prohibit disclosure. Sterk alleges, however, that Redbox's policy was not identified or made available to him and thus that he was not given an opportunity, in a clear and conspicuous manner, to prohibit disclosure. The Court cannot resolve this conflict in

20

the context of a motion to dismiss for failure to state a claim.

Finally, Redbox contends that plaintiffs' construction of subsection 2710(e) renders the statute unconstitutionally vague due to purported ambiguity in the phrase "as soon as practicable." Courts addressing this language in other contexts have noted that the phrase is "not easily defined" but "should be construed as requiring notice 'within a reasonable time under all the circumstances.'" *Argent Fin. Grp. Inc. v. Fidelity and Deposit Co. of Md.*, No. 3:04CV02323, 2006 WL 1793609, at *3 (W.D. La. June 28, 2006) (citing *Young v. Travelers Ins. Co.*, 119 F.2d 877, 880 (5th Cir. 1941)); *see also United States v. Geller*, 560 F. Supp. 1309, 1314 n.3 (D.C. Pa. 1983) (rejecting a defendant's argument that the phrase "as soon as practicable" is unconstitutionally vague). Redbox's void-for-vagueness argument fails.

In sum, Sterk has alleged a plausible claim that Redbox failed to destroy his personally identifiable information as soon as practicable after the purpose for which it collected the information no longer existed.

### Conclusion

The Court denies defendant's motion to dismiss plaintiffs' claims under 18 U.S.C. § 2710(e) [docket no. 23].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 19, 2011