IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEVIN STERK and JIAH CHUNG, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> REDBOX AUTOMATED RETAIL, LLC, <br><br> Defendant. | Case No. 1:11-cv-01729 <br><br> Honorable Matthew F. Kennelly <br><br> Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANT REDBOX AUTOMATED RETAIL, LLC'S
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXTEND
THE CLASS DISCOVERY AND RELATED DEADLINES AND
FOR LEAVE TO FILE THEIR SECOND AMENDED COMPLAINT**

Plaintiffs[1] have failed to show "good cause" to amend the scheduling order or to file yet another amended complaint weeks after the pleading cutoff date when in fact Plaintiffs have not been diligent and could have raised these issues from the outset. This is particularly so where the proposed amendment is based on theories that are plainly futile (in fact, the breach of contract theory attempt to create a private right of action has been expressly rejected by the United States Supreme Court).

Furthermore, while Plaintiffs spend most of their brief complaining about Redbox's discovery response efforts (which are completed), Plaintiffs allowed substantial time to pass during the discovery period without serving *any* discovery on Redbox. In addition, despite *Redbox's* repeated requests to meet and confer regarding Plaintiffs' overly broad and far reaching discovery requests, Plaintiffs failed to identify any additional information they needed before they filed this Motion, and were "not prepared" to discuss Redbox's discovery responses

---

[1] Plaintiffs Jiah Chung and Kevin Sterk will be referred to collectively as "Plaintiffs," and Defendant Redbox Automated Retail, LLC will be referred to as "Redbox".

- 1 -

at the Parties' March 20th meet and confer. This is not surprising given that Redbox has properly responded to Plaintiffs' discovery, answering Plaintiffs' 25 interrogatories and 35 document requests within 9 days of the original response deadline and completing its document production within 3 weeks of that. Those responses and production included, *inter alia*:

- Redbox's Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA") policies and practices;

- Historical and current versions of Redbox's Terms of Use and related policies; kiosk screen flows; web account sign up screens; and sample transactional emails that are sent to customers as part of the rental process (if requested by the customer);

- Information showing the vendors that Redbox uses to perform ordinary course of business activities; what information is (and more importantly is *not*) shared with those vendors; and the agreements between Redbox and those vendors; and

- All information Redbox has regarding Named Plaintiffs, including their transactional history, customer service chat logs, email communication lists, and any of Named Plaintiffs' information that was shared with vendors in the ordinary course of business.

*See, infra,* at 8-9 (expanding on the list of information produced). Given Plaintiffs' inability to point to any additional information they need, or that Redbox failed to produce, there is no good cause to extend the discovery deadline, particularly since Redbox agreed to push back fact depositions by three weeks to accommodate Plaintiffs' schedules and any inconvenience resulting from Redbox's three week production process.

In short, it is apparent that Plaintiffs—having received the above information—now recognize that their disclosure claims are without merit, and they are desperately seeking to resurrect their failed retention claims, using theories that are futile, including one the United States Supreme Court has expressly rejected. Plaintiffs' Motion lacks merit and should be denied so that Redbox can proceed to demonstrate that Plaintiffs' claims fail and that class certification is inappropriate in these circumstances.

## BACKGROUND

This putative nationwide class action was originally brought asserting a single claim—namely, violation of § 2710(e) of the VPPA based on Redbox's alleged failure to destroy old records. *See* Doc. 1, Compl. at ¶¶ 40-46. Redbox moved to dismiss that claim, arguing that no private right of action existed. *See* Docs. 23-24. In response, Plaintiffs amended their complaint to include a disclosure claim under § 2710(b).[2] *See* Doc. 27. Recognizing the impact of the Plaintiffs' main "retention" claim on the scope of discovery and ultimately the case as a whole, this Court, while denying Redbox's motion to dismiss the retention claim, agreed to certify the issue for interlocutory appeal under 28 U.S.C. § 1292(b). While that appeal was pending, discovery has proceeded only on Plaintiff's "disclosure" claims. *See* Doc. 81 (scheduling order).

This Court specifically opened discovery on December 21, 2011 and, at Plaintiffs' request, set a short class certification-related discovery period. *Id.* Plaintiffs, however, did not serve *any* discovery on Redbox until January 25, 2012—only after Redbox served its discovery requests on Plaintiffs and even then nearly a week later. *See* Exhibit A (Plaintiff Kevin Sterk's Discovery Requests); Exhibit B, Declaration of Anthony Eliseuson at ¶ 2. Plaintiffs granted two minor extensions to Redbox, *for a total of nine days*, to provide its written responses. *See* Exhibit B at ¶ 2. Redbox timely served its written responses on March 7th. *Id*. at ¶ 3.

On March 8th, Redbox sent, via email, a letter to Plaintiffs' counsel regarding the deficiencies in Plaintiffs' responses to Redbox's discovery requests, and requesting a meet and confer to discuss all discovery issues. *Id.* at ¶ 4 and Exhibit 1 thereto. Later that same day,

---

[2] In its recent decision, the Seventh Circuit characterized Plaintiffs' claims, noting that "if the appeal is not allowed, and the suit proceeds in the district court on both the disclosure and destruction claims, the completion of the litigation will take longer than if the destruction claim is out of the case, especially since that claim appears to be plaintiffs' main one, with the disclosure claim perhaps just a life jacket." *Sterk v. Redbox Automated Retail, LLC*, No. 12-8002, ___ F.3d ___, 2012 WL 695638, at *2 (7th Cir. Mar. 6, 2012)

- 3 -

Plaintiffs' counsel sent an email claiming that Redbox's discovery responses were inadequate and that they would "send a letter, likely by tomorrow, outlining the deficiencies." *Id.* at ¶ 5 and Exhibit 2 thereto. Plaintiffs also claimed Redbox's request for a protective order prior to producing documents was improper. *Id.* at ¶ 6. Redbox's counsel responded four hours later by agreeing to produce documents without the entry of a court protective order if Plaintiffs would agree to abide by that proposed order. *Id.* at ¶ 7 and Exhibit 3 thereto. Redbox also repeated its request for a meet and confer to discuss the discovery issues, reiterating the request previously made in Redbox's written discovery responses with regard to Plaintiffs' overly broad and far reaching discovery requests. *Id.* at ¶¶ 3, 7.

Plaintiffs finally agreed to a meet and confer to discuss discovery issues on March 20, 2012, nearly two weeks after Redbox first requested such a conference. *Id.* at ¶ 10. On the parties' March 20th call, Plaintiffs agreed that the points made by Redbox were valid, and agreed to supplement in 10 days. *Id.* at ¶ 11. Counsel for Redbox objected to that time period given the approaching discovery cutoff, to which Plaintiffs indicated that they were seeking an extension of the schedule by 60 days. *Id.* Ultimately, counsel for Redbox agreed to a two or three week extension out of professional courtesy to accommodate Plaintiffs' and their counsel's schedules (as the Named Plaintiffs' were unable to sit for depositions on the dates Redbox noticed earlier in March), and so that the parties could meet and confer to shore up what had already been produced by both sides. *Id.*

With regard to Redbox's responses, Plaintiffs' counsel indicated they were "not prepared" to address them, and asked for a second conference on March 27th. *Id.* at ¶ 12. On March 21, 2012, at the status hearing before this Court, Plaintiffs sought a discovery extension and this Court indicated they would be required to file a motion. That same evening, the discovery letter that Plaintiffs had been promising for nearly two weeks, was finally sent. *Id.* at

- 4 -

14; *see also* Pls.' Mem. at Exhibit D. Two days later, on March 23rd, and before any meet and confer occurred, Plaintiffs filed this motion. Docs. 90-91. On March 26, 2012, Redbox sent a response letter to Plaintiffs' March 21st discovery letter. *Id.* at ¶ 14 and Exhibit 6 thereto.

On March 27th, at the meet and confer, Plaintiffs reiterated several points from their March 21, 2012 letter, primarily requesting Redbox to identify specific bates ranges of documents responsive to each Request and Interrogatory, and also significantly narrowing and limiting certain requests and interrogatories. Redbox agreed to consider the points made and provide supplemental responses no later than April 6, 2012. *Id.* at ¶ 17.

## ARGUMENT

### I. Plaintiffs Cannot Show "Good Cause" Because They Have Not Been Diligent And Could Have Raised These Claims From The Outset.

Plaintiffs' Motion fails to meet Rule 16(b)'s "good cause" requirement. The Seventh Circuit has explained that "[i]n making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) (citing *Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) and 3 Moore's Federal Practice § 16.14[1][b], at 16-72 (Matthew Bender 3d ed. 2010)). Here, Plaintiffs were not diligent and cannot establish good cause for several reasons.

#### A. Plaintiffs could have asserted their "new" theories from the outset of this case, and in fact previously referenced them in prior pleadings and briefs.

The proposed amendments[3] could have been brought from the outset of this case as nothing occurred during discovery or the course of these proceedings that gave rise to a breach of contract claim or allegations under the Stored Communications Act. To the contrary, Plaintiffs'

---

[3] A redline of the changes Plaintiffs propose for their Second Amended Consolidated Class Action Complaint is attached hereto as Exhibit C.

prior Complaint expressly asserted there was *no* contract and disclaimed the enforceability of Redbox's Terms of Use, which demonstrates that Plaintiffs were aware of a potential contractual-based theory. *See, e.g.,* Doc. 27 at ¶ 61. Similarly, Plaintiffs themselves invoked the Stored Communications Act in their prior briefing, asserting (incorrectly) that Plaintiffs had a private right of action under that Act. *See, e.g.,* Doc. 37 at 19-20. Thus, at the latest, in July of 2011, Plaintiffs were aware of these potential (albeit legally flawed) claims, yet sat back for nearly 9 months and allowed the February 17th pleading deadline to pass before filing a motion seeking to amend. Nothing changed in the interim. Such conduct fails the "good cause" requirement.

>     B.   **The recent Seventh Circuit decision is not a "change in the law," and does not establish "good cause," as the Seventh Circuit has held.**

Nor is Plaintiffs' reliance on the Seventh Circuit's recent decision "good cause." *See* Pls.' Mem. at 7-10. In affirming the denial of an amendment under Rule 16(b), the Seventh Circuit in *Alioto* specifically rejected the argument that the granting of a motion to dismiss is "good cause" because "a party should always ask itself whether the complaint it wants to file sets out a viable claim. (If the party does not do so on its own, its lawyer is required to ask that question. Fed. R. Civ. P. 11(b)(2).)." *Alioto*, 651 F.3d at 720. This applies with extra force here because Plaintiffs (or their counsel) should have been fully aware of the Sixth Circuit's decision before they filed this lawsuit, and certainly they became aware of it when Redbox filed its Motion to Dismiss on June 9, 2011. *See* Docs. 23-24; *Daniel v. Cantrell*, 375 F.3d 377 (6th Cir. 2004), *cert. denied,* 125 S. Ct. 874 (2005). Put simply, there was no "change in the law," here; rather, the Seventh Circuit simply followed the Sixth Circuit's decision in construing the VPPA. Thus, Plaintiffs were required to bring any alternative causes of action before the February 17th pleading cutoff date and there is no "good cause" for them to delay doing so until now. *Alioto*,

651 F.3d at 720; *see also Trustmark Ins. Co.*, 424 F.3d at 553 (affirming denial of motion to amend under 16(b) because plaintiff "was, or should have been, aware of the facts underlying its" new claim before the pleading deadline passed).[4]

### C. Plaintiffs have not been diligent in pursuing discovery or their claims.

Plaintiffs also cannot show "good cause" because they have not been diligent in pursuing discovery in this case. On December 21, 2011, this Court allowed a four month fact discovery period for the class certification issues. *See* Doc. 81. Plaintiffs, however, waited more than a month (over 25%) of that period to serve *any* discovery. *See* Exhibit A; Exhibit B at ¶ 2. Moreover, despite *Redbox's* repeated requests for a meet and confer over the course of three weeks, Plaintiffs were "not ready" to discuss Redbox's discovery responses on March 20th and requested a March 27th meet and confer date (a date that fell *after* Plaintiffs filed this Motion). *See* Exhibit B at ¶¶ 2-12. Plaintiffs' request for an extension of 60 days is a direct result of their own dilatory conduct, and is also unjustified, particularly given that Redbox already *agreed* to push out fact depositions by three weeks to accommodate Plaintiffs' schedules. *Id.* at ¶ 11.

### D. Redbox has produced all information and documents relevant and necessary to proceed with briefing the class certification issues and Named Plaintiffs' disclosure claims and Plaintiffs have not identified *any* additional information they need.

Plaintiffs also do not establish "good cause" based on Plaintiffs' baseless attacks on Redbox's discovery responses and production. *See* Pls.' Mem. at 5-7. Not only are Plaintiffs'

---

[4] Nor is there good cause simply because Plaintiffs are apparently planning on filing similar claims in another VPPA case in this Judicial District in which Plaintiff Sterk is also the named plaintiff. *See* Pls.' Mem. at 9 n.7 ("Judge Darrah found that the Seventh Circuit's *Sterk II* ruling provided the requisite good cause showing under Rule 16 for plaintiff to amend his complaint"). The Docket in that case reflects that Defendant withdrew its motion for judgment on the pleadings, which it had filed the day after the Seventh Circuit's ruling in this case, suggesting that the Defendant in that case acquiesced to the amendment, which Redbox certainly does not do here. *See* Doc. 60, 11-cv-01894. Moreover, it is apparent that the issue of "good cause" was not briefed to Judge Darrah, nor was futility of the proposed amendments.

complaints premature given that Plaintiffs were "not ready" to meet and confer about these issues on March 20th, *see, infra,* Point IV (discussing Local Rule 37.2), Redbox's production is complete. Redbox, in good faith, spent significant time diligently responding to Plaintiffs' discovery requests and producing documents that provided all relevant and necessary information for the parties to fully brief and argue the class certification questions and the merits of Named Plaintiffs' disclosure claims, including:

- Information showing Redbox's policies and practices with regard to the VPPA.

- Substantive narrative responses, identification of key witnesses, and copies of voluminous materials regarding Redbox's Terms of Use, Terms and Conditions, Rental Terms and Conditions, and Privacy Policy—all of which relate to many of the issues in this case and allegations in Plaintiffs' Amended Consolidated Complaint.

- Documents showing all transactional information Redbox had regarding the Named Plaintiffs, including their rental transactional histories, a list of the emails that were sent to Jiah Chung, and a customer service chat log with Ms. Chung.

- Current and historical versions of kiosk screen flows to show the way information was presented to customers, including Named Plaintiffs, and one way in which they bound themselves to the Terms of Use, Terms and Conditions, and Rental Terms and Conditions.

- Web Account sign-up screen flows to show how that customer rental route presents information to the customer.

- Various typical emails sent to customers, when they so request, providing receipts of their rental and return transactions.

- Vendor agreements with those vendors Redbox uses in the ordinary course of business that may have access to some customer or transactional information.

- Information showing the data streams of information sent to vendors in the ordinary course of business relative to Named Plaintiffs.

- Substantial information regarding Redbox's Information Technology, specifically relative to Redbox's certification as a PCI Tier I certified organization. These documents provide information as to Redbox's information technology systems and data security.

- Information demonstrating the approximately number of Redbox rentals per year for the last seven years.

*See* Exhibit B at ¶ 14 and Exhibit 6 thereto (Redbox's March 26, 2012 Response Letter to Plaintiffs' March 21, 2012 16-page discovery letter). Plaintiffs have failed to identify *any* additional information they require to proceed with the class certification briefing.

In any event, Redbox has been providing information diligently throughout this process and Plaintiffs are simply not being diligent in pursuing this case. Indeed, throughout the parties' discovery communications, Redbox has responded promptly to Plaintiffs' emails regarding discovery. For example, when, on Friday March 16th at 6:54 p.m., Plaintiffs complained that they were "having a difficult time reviewing the produced documents given that Redbox neglected to identify which documents are responsive to each request and each interrogatory," Redbox responded promptly on Saturday March 17th at 3:32 pm by providing Plaintiffs with a description of the documents, which were "grouped categorically for everyone's convenience" and in any event were easily identifiable by Redbox's responses describing the documents. *See* Exhibit B at ¶ 15 and Exhibit 7.

## II. The Proposed Amended Complaint Is Futile.

Plaintiffs seek to add two new causes of action in their proposed second amended complaint: (1) a breach of contract claim that attempts to circumvent Congress's choice to not provide a private right of action for retention claims; and (2) a claim under the Stored Communications Act. *See* Pls.' Mem. at 11-12; Exhibit C (redline). Both of these claims fail as a matter of law, the first being directly rejected by the United States Supreme Court in 2011, and the second failing under Plaintiffs' own statements to the Seventh Circuit.

### A. The Supreme Court has rejected attempts to create a private right of action via a breach of contract claim, and Plaintiffs' attempt to assert such a claim is wholly frivolous.

As the Supreme Court recently emphasized in rejecting the precise type of contractual claim Plaintiffs propose here: "'recognition of any private right of action for violating a federal

- 9 -

statute' . . . 'must ultimately rest on congressional intent to provide a private remedy.'" *Astra USA, Inc. v. Santa Clara County, Ca.*, 131 S. Ct. 1342, 1347 (2011) (rejecting a litigant's attempt bring a breach of contract claim to create a private right of action where none otherwise exists). Declining to allow plaintiffs to make an end-run around congressional intent, the Supreme Court found that a "suit to enforce the [agreement that included the provisions of the federal statute] is in essence a suit to enforce the statute itself. The absence of a private right to enforce the statutory ceiling price obligations would be rendered meaningless if [plaintiffs] could overcome that obstacle by suing to enforce the contract's ceiling price obligations instead. The statutory and contractual obligations, in short, are one and the same." *Id.* at 1348 (citation omitted). The Court concluded that "their treatment, therefore, must be the same, "no matter the clothing in which [plaintiffs] dress their claims." *Id.* at 1345 (quoting *Tenet v. Doe*, 544 U.S. 1, 8 (2005)).

      The *Astra* decision is well in-line with established case law that prohibits plaintiffs from using contract theory to secure greater private rights than they have under a statute. For example, in *MM&S Financial, Inc. v. National Association of Securities Dealers, Inc.*, 364 F.3d 908, 911(8th Cir. 2004), the Eighth Circuit affirmed the district court's denial of plaintiff's motion to amend its complaint to add a breach of contract claim after the court had found that there was no private right of action in the federal statute that served as the basis of plaintiff's complaint. The Court found that "allowing [plaintiff] to assert a private breach of contract claim would vitiate Congress's intent not to allow private rights of action" for violations of the federal statute. *Id.* at 912. Accordingly, the Court concluded that the "district court did not abuse its discretion in denying [plaintiff's] late decision to recast its entire lawsuit into one for breach of contract." *Id.* at 911. *See also Council Oaks Learning Campus, Inc. v. Farmington Cas. Co.*, No. 99-5122, 2000 WL 376623, at *3 (10th Cir. Apr. 13, 2000) (holding that a plaintiff cannot maintain a breach of contract claim based on the Oklahoma Unfair Claims Settlement Practices

Act because the Act does not itself confer a private right of action, even though the Court fully agreed with plaintiff that "existing applicable law is part of every contract"); *Umbland v. Planco Fin. Servs., Inc.*, 542 F.3d 59, 67 (3d Cir. 2008) (affirming district court's dismissal of plaintiff's breach of contract claims that alleged federal statute violations because to hold otherwise "would contradict Congress's decision not to include expressly a private right of action").

As in *MM&S*, this Court should find that Plaintiffs' proposal of dressing up their failed retention claim under the VPPA as a breach of contract claim is futile as a matter of law. Plaintiffs are simply not allowed to place a different label on their cause of action to obtain a remedy not provided by Congress.[5]

### B. The Stored Communications Act does not save Plaintiffs' retention claims, and would preclude class certification in any event because of the requirement of proving "actual damages."

As to Plaintiffs' Stored Communications Act claim, the Plaintiffs themselves represented to the Seventh Circuit that it "require[s] a showing of actual damages because [it] provide[s] minimum damages to those people "entitled to recover," *i.e.*, those who have shown actual damages." *See* Doc. 13 at 15 n.11 (Plaintiffs' Petition for Rehearing in 7th Circuit Case No. 12-8002); *see also Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 206 (4th Cir. 2009) ("[W]e

---

[5] Such a claim would not be susceptible to class wide treatment in any event for several reasons. *See, e.g., Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 398 (6th Cir. 1998) (no common questions where proof of each contractual agreement depended on documents and representations for each plaintiff). This is a particular problem here since Plaintiffs themselves continued to rent from Redbox even after learning of its retention practices, which would defeat their claims. *See generally Babineau v. Federal Express Corp.*, 576 F.3d 1183, 1192 (11th Cir. 2009) (affirming denial of class certification of contract claim because even "assuming the existence of a contract, the district court acknowledged that FedEx may mount an individualized defense that an employee knew of FedEx's policy prohibiting off-the-clock work and chose to engage in it anyhow in breach of that contract"). Such a claim would also require proof of "actual damage," which could not be prosecuted on a class wide basis. *See generally Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006) ("What each person's injury may be is a question that must be resolved one consumer at a time," and therefore proceeding under a legal theory that required proof of actual damages would "preclude class treatment").

hold that the plain language of [the Stored Communications Act] unambiguously requires proof of actual damages as a prerequisite to recovery of statutory damages.")  But the Seventh Circuit specifically recognized that mere retention would *not* give rise to any injury or actual damages, thus, Plaintiffs' attempt to assert such a claim based on mere retention is futile under the Seventh Circuit's decision in this case.  *Sterk v. Redbox Automated Retail, LLC*, No. 12-8002, ___ F.3d ___, 2012 WL 695638, at *3 (7th Cir. Mar. 6, 2012) ("If, though not timely destroyed, [PII] remained secreted in the video service provider's files until it was destroyed, there would be no injury.").  Moreover, without an injury, there is no Article III case or controversy.  *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).[6]

Moreover, it is apparent that the Stored Communications Act is not applicable.  Congress enacted that Act in part to protect individuals from the "growing problem of unauthorized persons deliberately gaining access to, and sometimes tampering with, electronic or wire communications that are not intended to be available to the public."  S. Rep. No. 99-541, at 35; 1986 U.S.C.C.A.N. 3555, 3589.  The Act "aims to prevent hackers from obtaining, altering or destroying certain stored electronic communications."  *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 507 (S.D.N.Y. 2001) (citing *Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F. Supp. 2d 817, 820 (E.D. Mich. 2000)).  Such issues are not presented by Plaintiffs' Complaint here.

### III.     Redbox Would Be Unduly Prejudiced By This Untimely Amendment.

Even if Plaintiffs could show good cause (and they cannot), and even if Plaintiffs' proposed amendments were not futile (and they are), Plaintiffs' motion should still be denied because allowing an amendment now would be highly prejudicial to Redbox.  This case has been

---

[6] In any event, such a claim could not be prosecuted on a class wide basis because of the highly individualized proofs required for any supposed "actual damages" as noted above in note 5.

- 12 -

pending for over a year, during which time the Parties have extensively briefed several legal issues, the Parties have already fully resolved one appeal —which this Court certified for review and the Seventh Circuit accepted for review upon finding the case would be materially advanced if the "destruction claim [were] out of the case"—and the Parties have engaged in extensive discovery on the purported disclosure claim. Fact discovery on the class certification issues for the disclosure claim is set to close on April 6, 2012 after four months of discovery. *See* Doc. 81.

Redbox would also be significantly prejudiced by an amendment at this stage and the corresponding delay it would cause. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Westport Ins. Co.*, No. 10 C 6096, 2012 WL 698540, at *3 (N.D. Ill. Feb. 29, 2012) (denying motion for leave to amend as "untimely and prejudicial to the [d]efendant," given that defendant "has already expended considerable time and expense conducting discovery to defend against [plaintiff's] original theory"); *Boland v. Ill. Dep't of Mental Health and Developmental Disabilities*, No. 97 C 2913, 2000 WL 968817, at *2-*3 (N.D. Ill. July 12, 2000) (denying leave to amend because it would result in prejudice, as "[i]t was only when [plaintiff] was looking down the barrel of [a Supreme Court decision] that she waived the white surrender flag . . . and attempted to launch a new offensive"; "there appears to be no reason why [plaintiff] could not have raised this other cause of action prior to the time she did"); *McCann v. Frank B. Hall & Co., Inc.*, 109 F.R.D 363, 366, 368 (N.D. Ill. 1986) (finding undue prejudice to defendant would result if leave to amend was granted six weeks prior to discovery cutoff date when new complaint would "change the entire orientation of the case," and when plaintiff's newly cited case law did not provide "plaintiff with a new cause of action that was not available earlier").

This is particularly so when it is apparent that Plaintiffs are simply trying to resurrect the failed retention claims with theories that could have been raised at the outset of the case, or at least before discovery commenced, and are futile in any event. Furthermore, nearly a month ago,

Redbox had noticed Named Plaintiffs' depositions for this week (March 27 and 29), only being told last week that Plaintiffs were not prepared to present their clients for their properly noticed depositions. Exhibit B at ¶ 16. While Redbox agreed to the courtesy of rescheduling those depositions for a more convenient time for Plaintiffs (two weeks after the noticed dates), Plaintiffs' lack of diligence is already prejudicing Redbox, and an untimely amendment, designed to expand the entire scope of this litigation and somehow get the "retention" claims back in the case, would only exacerbate that prejudice.

### IV.     Plaintiffs' Motion Violates Local Rule 37.2.

Plaintiffs' Motion should be denied on its merits for all the reasons discussed above. It should also be denied under this Court's Standing Orders and Local Rule 37.2 because Plaintiffs seek to justify their requested relief on supposed discovery disputes without first having met and conferred with Redbox as required. LR 37.2 (requiring the meet and confer in person or by telephone); *see also* Standing Order on Discovery Motions (reiterating the requirements of Local Rule 37.2). Worse yet, Plaintiffs were not ignorant of this fact, and expressly claimed compliance with Rule 37.2 based on a March 21st letter. *See* Pls.' Mem. at 5. But as this Court's Standing Orders make clear: "Parties are reminded that compliance with Local Rule 37.2 requires a good faith effort to resolve discovery disputes and communication that takes place ***face to face or by telephone***." (emphasis added). Here, *Redbox* repeatedly requested a meet and confer on these issues. Exhibit B at ¶¶ 2-12. Plaintiffs were "not ready" for such a teleconference on March 20th when Redbox's raised its issues with Plaintiffs' discovery responses, and the Parties scheduled a second meet and confer for March 27th to discuss any issues Plaintiffs had with Redbox's responses. *Id.* at ¶ 12. Yet Plaintiffs prematurely filed this Motion on March 23rd before that conference occurred. Thus, this is simply another reason why Plaintiffs' Motion should be denied. *See, e.g.*, *Healix Infusion Therapy, Inc. v. HHI Infusion*

*Services, Inc.*, No. 10 C 3772, 2010 WL 3168305, at *1 (N.D. Ill. Aug. 9, 2010) (denying motion to compel based on failure to comply with LR 37.2).

## **CONCLUSION**

For all the foregoing reasons, Redbox respectfully submits that this Court should deny Plaintiffs' Motion in its entirety.

Dated:  March 28, 2012　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Anthony T. Eliseuson
　　　　　　　　　　　　　　　　　　　　One of the attorneys for Defendant Redbox
　　　　　　　　　　　　　　　　　　　　Automated Retail, LLC

Donna J. Vobornik (ARDC #6195767)
Natalie J. Spears (ARDC #6230320)
Anthony T. Eliseuson (ARDC #6277427)
SNR DENTON US LLP
233 South Wacker Drive
Suite 7800
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
donna.vobornik@snrdenton.com
natalie.spears@snrdenton.com
anthony.eliseuson@snrdenton.com

*Attorneys for Defendant Redbox Automated Retail, LLC*

## **CERTIFICATE OF SERVICE**

I, Anthony T. Eliseuson, an attorney, hereby certify that on March 28, 2012, I electronically filed the preceding with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to the following:

- **Ari J. Scharg**
  ascharg@edelson.com

- **Rafey S. Balbanian**
  rbalabanian@edelson.com

- **Benjamin S. Thomassen**
  bthomassen@edelson.com

- **Joseph J. Siprut**
  jsiprut@siprut.com

- **Aleksandra M. S. Vold**
  avold@siprut.com

/s/Anthony T. Eliseuson
Anthony T. Eliseuson

13028205