**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KEVIN STERK and JIAH CHUNG,** | ) | |
| **individually, and on behalf of a class of** | ) | |
| **similarly situated individuals,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 11 C 1729** |
| | ) | |
| **REDBOX AUTOMATED RETAIL, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Kevin Sterk and Jiah Chung have sued Redbox Automated Retail, LLC for

violations of the Video Privacy Protection Act (VPPA) and breach of contract. They

seek to represent a class of similarly situated individuals. Redbox has moved to

dismiss plaintiffs' second amended complaint. For the reasons stated below, the Court

grants Redbox's motion in part and denies it in part.

### Background

Redbox rents digital video discs (DVDs) to consumers through more than 30,000

automated, self-service kiosks located throughout the United States. Plaintiffs allege

that they were customers of Redbox and that it unlawfully retained and disclosed their

private information in violation of the VPPA. 18 U.S.C. § 2710(b) & (e). The VPPA

generally prohibits persons in the business of renting and selling video tapes and similar

media from disclosing information about what videos their customers have purchased

and from retaining that information longer than necessary. *Id.*

Redbox moved to dismiss plaintiffs' claim for unlawful retention, arguing that the VPPA did not provide a private right of action. The Court concluded that subsection 2710(c) authorized a private right of action for violations of subsection 2710(e). *Sterk v. Redbox Automated Retail, LLC*, 806 F. Supp. 2d 1059, 1069 (N.D. Ill. 2011). The Court certified the question to the Seventh Circuit for interlocutory appeal. The Seventh Circuit accepted the appeal and reversed. *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 537 (7th Cir. 2012). It held that subsection 2710(c) did not authorize a private right of action for unlawful retention of personal information in violation of subsection 2710(e). *Id.* at 538–39.

On remand, plaintiffs sought to amend their complaint to include claims that Redbox violated subsection 2710(e) and for breach of contract. Plaintiffs argued that they could bring a claim for violation of subsection 2710(e) via the Stored Communications Act (SCA). *See* 18 U.S.C. § 2707. Redbox contended, among other things, that the amended complaint was futile because the SCA requires a showing of actual damages and the breach of contract claim could not survive without the SCA claim. The Court rejected these arguments and allowed plaintiffs to amend their complaint. *Sterk v. Redbox Automated Retail, LLC*, 11 C 1729, 2012 WL 1419071 (N.D. Ill. Apr. 24, 2012).

Following amendment, Redbox moved to dismiss, asserting additional arguments regarding the sufficiency of the amended complaint. These arguments were available to Redbox when it opposed the motion to amend, but it did not assert them. The Court will nonetheless consider Redbox's arguments, though it notes that the way Redbox

2

chose to proceed has led to unnecessary delay and added expense.

## Discussion

A plaintiff "has stated a claim only if it has alleged enough facts to render the claim facially plausible, not just conceivable." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). "When analyzing the sufficiency of a complaint, [the Court] construe[s] it in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in the nonmoving party's favor." *Id.*

Redbox contends that plaintiffs' retention claim fails because the SCA does not give a private right of action to enforce the VPPA; their breach of contract claim fails; they lack standing; and they did not sufficiently plead their disclosure claim. Redbox also argues that if the Court does not dismiss plaintiffs' claims, it should certify the matter to the Seventh Circuit for interlocutory appeal.

## A.    Private right of action under the SCA

Plaintiffs assert a claim under the SCA against Redbox for its unlawful retention of their private information in violation of the VPPA. *See* 18 U.S.C. § 2707. Section 2707 of the SCA states that

> any . . . person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

*Id.* § 2707(a). The VPPA, including the retention provision that plaintiffs assert Redbox violated, is located in the same chapter of the United States Code as the SCA's remedy provision. *Id.* §§ 2707(a) & 2710(e). Plaintiffs therefore contend that section 2707's authorization of a civil suit by anyone aggrieved "by any violation of this chapter"

3

includes persons who claim unlawful retention under subsection 2710(e).  Redbox

contends that the SCA's authorization of a civil action does not apply to violations of the

VPPA.

> The Seventh Circuit has explained that statutory interpretation
>
> must start, of course, with the words that Congress employed.  We shall give the words of a statute their ordinary meaning unless the context counsels otherwise.  If the plain wording of the statute is clear, our work is at an end.  However, in interpreting the wording of a statute, we must consider not only the words of the statute, but also the statute's structure: Context, not just literal text, will often lead a court to Congress's intent in respect to a particular statute.  Similarly, we must take into account the relationship of the statute to other provisions of the code.  Congress does not legislate in a vacuum.  We must assume that Congress is cognizant of other statutory provisions and expects its new enactments to work in harmony with existing provisions.

*Ortega v. Holder*, 592 F.3d 738, 743 (7th Cir. 2010) (citations and internal quotation

marks omitted); *see Sterk*, 672 F.3d at 538 (interpreting the phrase "any act of a person

in violation of this section" more narrowly than the plain language might suggest,

because of the context and the placement of the phrase in the section).  In addition, "[a]t

the time a statute is enacted, it may have a range of plausible meanings.  Over time,

however, subsequent acts can shape or focus those meanings."  *FDA v. Brown &*

*Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000).

Consideration of the language of section 2707 in the context of the statute leads

the Court to conclude that Congress did not intend for plaintiffs to be able to bring a

VPPA retention claim under the SCA.  When Congress originally enacted the SCA in

1986 as part of the Electronic Communications Privacy Act (ECPA), it could not have

intended for the SCA's authorization of civil suits to apply to the VPPA, because the

VPPA did not yet exist.  Electronic Communications Privacy Act of 1986, Pub. L. No.

99-508 tit. II, 100 Stat. 1848. Congress enacted the VPPA two years later. Video

Privacy Protection Act of 1988, Pub. L. No. 100-618, 102 Stat. 3195. The VPPA

included its own provision authorizing civil actions. 18 U.S.C. § 2710(c). The fact that

Congress included a provision in the VPPA authorizing civil suits suggests that it did not

think that the SCA's cause of action provision applied to the VPPA.

Furthermore, when the VPPA was added to the chapter containing the SCA, it

was placed in a section following the remedy provision of the SCA, even though all of

the substantive provisions of the SCA to which that statute's remedy provision might

otherwise apply precede the remedy provision. 18 U.S.C. §§ 2707 & 2710. Plaintiffs

note that Congress placed the VPPA after section 2707, which provides civil remedies

for "any violation of this chapter," and before section 2711, which defines terms "[a]s

used in this chapter." *Id.* §§ 2707 & 2711. They contend that the VPPA's placement

between two sections that define their scope by reference to the entire chapter

containing the SCA and VPPA indicates that Congress intended the SCA's cause of

action provision to apply to the VPPA. Logically, however, the remedy provision of the

SCA applies only to the portions of the chapter that precede it. *Sterk*, 672 F.3d at 538.

Additionally, if section 2707 were to apply to the VPPA, there would be two

separate civil action provisions that applied to the VPPA – the SCA's provision,

subsection 2707(a), and the VPPA's own provision, subsection 2710(c). Even though

each provides for a different amount of statutory damages, interpreting the SCA

provision to apply to the VPPA would render each provision somewhat superfluous or

insignificant. "It is a cardinal principle of statutory construction that a statute ought,

upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or

5

word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); *accord Corley v. United States*, 556 U.S. 303, 313–14 (2009) (refusing to interpret general language in statute in a way that rendered more specific language superfluous). Furthermore, "[w]hen Congress crafts particular remedies for particular wrongs, the presumption is that these are exclusive remedies and that such limitations as they may embody are not to be circumvented by extending a more generally worded statute over the subject of the more specific one." *McDonnell v. Cisneros*, 84 F.3d 256, 261 (7th Cir. 1996) (fact that claims would be barred by sovereign immunity under Federal Tort Claims Act was a reason not to allow the same claims under Title VII). Because plaintiffs cannot bring their VPPA claim under the VPPA itself, the principle stated in *McDonnell* suggests that they should not be able to bring it under the SCA.

In addition, "[a] specific statute takes precedence over a more general statute, and a later enacted statute may limit the scope of an earlier statute." *Bhd. of Maint. of Way Emps. v. CSX Transp., Inc.*, 478 F.3d 814, 817 (7th Cir. 2007). If Congress, as the Seventh Circuit has determined, did not intend that plaintiffs have a cause of action for retention under the VPPA, then it is unlikely that it intended for plaintiffs to have a remedy under the more general and older SCA. *Brown v. Gov't Servs. Admin.*, 425 U.S. 820, 832–33 (1976) ("It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading.").

The Court notes that this conclusion is also consistent with the Seventh Circuit's decision in *Sterk*. Among other things, the Seventh Circuit expressed skepticism that there could be any actual damages resulting from unauthorized retention, making it less

6

likely that Congress would have sought to create a damages remedy for violations of section 2710(e).  *Sterk*, 672 F.3d at 538.  In addition, the Seventh Circuit noted that even without a damages remedy, courts still have inherent equitable authority to enjoin violations of section 2710(e).  *Id.* at 539.  Consequently, even without a damages remedy, there is still a method to enforce section 2710(e), and it is not rendered superfluous as plaintiffs suggest.

Plaintiffs have not cited anything in the legislative history that points toward a different reading of the statute.  They note that the Senate Committee report on the VPPA states:

> The civil remedies section puts teeth into the legislation, ensuring that the law will be enforced by individuals who suffer as the result of unauthorized disclosures.  It provides that an individual harmed by a violation of the Act may seek compensation in the form of actual and punitive damages, equitable and declaratory relief and attorneys' fees and costs.
> Statutory damages are necessary to remedy the intangible harm caused by privacy intrusions.  Similar remedies exist in the [the ECPA and SCA] as revised by this committee in 1986.  The absence of such a remedy in the Privacy Act of 1974 is often cited as a significant weakness.

S. Rep. No. 100-599, at 8 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342-8.

Plaintiffs suggest that this language establishes that the VPPA damages provision applies to disclosures and that the SCA provision is intended to cover other violations of the VPPA.  Nothing in the committee report language, however, indicates that this is what Congress intended.  On its face, the passage plaintiffs cite indicates that Congress had no intention of providing any remedy for unauthorized retention, but merely for unauthorized disclosure.  Furthermore, this passage illustrates that Congress did not think there was a damages remedy available for violations of the VPPA other than the

civil remedies contained in the VPPA itself. Otherwise, the civil remedies section would not be needed to "put[ ] teeth" into the VPPA. The committee's only reference to the other statutes (the ECPA and the SCA) was to note that they also provide for statutory damages.

As indicated earlier, plaintiffs rely on the fact that section 2707(a) authorizes a civil action by any person "aggrieved by any violation *of this chapter*," noting that the VPPA's retention provision is also in the same chapter of the U.S. Code. Plaintiffs say that other sections contained in the same chapter as the SCA and the VPPA, such as 2711 and 2712, use the term "chapter" in a broad way. They contend that this indicates that the same term should be read broadly in section 2707 as well.

The Court does not agree. Section 2711, part of the SCA, is a definitions section, and it defines terms "[a]s used in this chapter." 18 U.S.C. § 2711. It does not, however, define any terms used in the VPPA, which has its own definitions section. 18 U.S.C. § 2710(a). A definitions section that is unconnected to the VPPA does not suggest that Congress intended the term chapter in section 2707 to refer to the VPPA as well as the SCA.

Similarly, plaintiffs find it significant that the last section in the chapter, section 2712, provides a civil action against the United States for "any willful violation of this chapter." *Id.* § 2712(a). This section was added by the USA PATRIOT Act in 2001. USA PATRIOT Act, Pub. L. No. 107-56 § 223, 115 Stat. 272 (2001). Plaintiffs argue that the word chapter in section 2712 must refer to all of the previous sections in the chapter, including the VPPA. This interpretation is contradicted by the history of section 2712. The USA PATRIOT Act added section 2712 and also amended section 2707, the

8

damages provision of the SCA, so that it applied only to entities "other than the United States." *Id.* These simultaneous changes suggest that the new damages provision in section 2712 was intended to replace the damages provision in section 2707 for violations of the SCA by the United States. The USA PATRIOT Act did not make any changes to the VPPA, however, suggesting that section 2712 was not intended to replace the damages remedy in the VPPA for violations of that statute.

Finally, there is another use of the word chapter in the SCA that sheds light on whether the SCA civil action provision applies to the VPPA. Section 2708 of the SCA provides that "[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter." 18 U.S.C. § 2708. Yet the VPPA has its own inconsistent preemption provision, which states that "[t]he provisions of this section preempt only the provisions of State and local law that require disclosure prohibited by this section." *Id.* § 2710. The SCA appears to broadly preempt other remedies, whereas the VPPA disclaims any preemption of state and local law remedies. The conflict between these sections again suggests that when sections of the SCA use the word chapter, Congress did not intend for that term to include the VPPA even though the two are contained within the same chapter of the U.S. Code.

In sum, the Court concludes that the SCA does not provide a private right of action for damages to enforce the retention provision of the VPPA. As the Seventh Circuit noted in *Sterk*, however, the Court does have the power to enjoin Redbox from violating the VPPA's retention provision if plaintiffs succeed in their suit. Accordingly, the Court dismisses plaintiffs' SCA claim except to the extent that it seeks injunctive

relief.

**B.     Breach of contract claim**

Plaintiffs state that they entered into contracts with Redbox to rent DVDs.  They

contend that these contracts incorporated all existing law, including the VPPA.  They

allege that Redbox breached the contracts by retaining and disclosing their private

information without authorization and in violation of the VPPA.  Plaintiffs' breach of

contract claim therefore incorporates both the unlawful disclosure violation of the VPPA

and the unlawful retention violation.  Redbox contends that plaintiffs cannot show

damages from any breach; they cannot circumvent the lack of private action in the SCA

and VPPA by bringing a breach of contract claim; their claim is preempted by the SCA;

and any breach of contract claim is time-barred.

**1.     Damages**

"Under Illinois law, the elements of a breach of contract cause of action are (1)

offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance

by the plaintiff of all required conditions, (5) breach, and (6) damages."  *Ass'n Ben.*

*Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007) (internal quotation marks

omitted).  Redbox maintains that plaintiffs cannot show any damages as a matter of law

from Redbox's alleged breach related to unlawful retention of their personal information.

Redbox does not contend that plaintiffs cannot show damages from a breach of contract

related to unauthorized disclosure of their information.

Plaintiffs advance two theories to describe their damages from Redbox's unlawful

retention.  First, they allege that they ascribe monetary value to the timely destruction of

their personal information.  2d Am. Compl. ¶ 90.  Second, they allege that they

10

bargained for the timely destruction of their information as part of the contract and that Redbox's failure to comply with the VPPA provisions regarding retention deprived them of the benefit of their bargain.  *Id.* ¶ 91.

In *Sterk*, the Seventh Circuit expressed great skepticism that there could be any damages from unlawful retention of a plaintiff's personal information if divorced from unlawful disclosure.  The court asked "[h]ow could there be injury, unless the information, not having been destroyed, were disclosed?  If, though not timely destroyed, it remained secreted in the video service provider's files until it was destroyed, there would be no injury."  *Sterk*, 672 F.3d at 538.  The court later stated that "a violation of [section 2710](e) is the failure to destroy private information even if lawfully obtained and not disclosed.  The injury inflicted by such a failure is enormously attenuated."  *Id.* at 539.  It concluded that "[u]nlawful disclosure is the only misconduct listed in the [VPPA] for which an award of damages is an appropriate remedy."  *Id.*

Reading the entire Seventh Circuit decision in context, it appears that the court has determined as a matter of law that damages are not an appropriate remedy for any claim based on unlawful retention.  This is particularly so because the court states plainly that unlawful disclosure is the only VPPA violation for which damages are appropriate.  The Court concludes that plaintiffs cannot establish actual damages for their breach of contract claim to the extent it concerns retention.

The Court's conclusion is reinforced by the lack of Illinois case law supporting plaintiffs' position.  (The parties agree that the contract claim arises under Illinois law.)  Specifically, plaintiffs have offered no authority, and the Court has found none, to suggest that the Illinois Supreme Court would recognize their arguments in favor of

damages on their retention breach of contract claim. Under Illinois law, a plaintiff can recover damages in a breach of contract action only "where the damages naturally and generally result from the breach or where the damages . . . were foreseeable and within the reasonable contemplation of the parties at the time the contract was entered into." *United Airlines, Inc. v. City of Chicago*, _ Ill. App. 3d _, 954 N.E.2d 710, 716 (2011). Plaintiffs have not alleged that their claimed damages from unauthorized retention of personal information result either naturally and generally from DVD rental transactions or that they were reasonably foreseeable to the parties at the time of the relevant transactions.

The Seventh Circuit has stated that when a federal court addresses a previously unaddressed issue of state law of this sort,

> the plaintiffs must come forward with *some* authority to support their view that they have a right to the relief they seek because, as we have stated, we have limited discretion with respect to untested legal theories brought under the rubric of state law. Without state authority to guide us, when given a choice between an interpretation of state law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path.

*Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635–36 (7th Cir. 2007) (citations, internal quotation marks, brackets, and ellipses omitted). In *Pisciotta*, the court considered Indiana law claims for negligence and breach of contract and declined to permit plaintiffs to recover damages for emotional distress related to concern that their identities would be stolen or the cost of taking steps to monitor their credit and prevent identity theft, because nothing in state law indicated that the Indiana Supreme Court would allow such damages. *Id.* at 635–40. The same is true here. Nothing in Illinois law indicates that a claim for money damages for one party's mere retention of

12

information received from another party is legally viable.

For these reasons, the Court dismisses plaintiffs' breach of contract claim to the extent that it relates to unauthorized retention in violation of 18 U.S.C. § 2710(e).

## 2. Lack of statutory cause of action

Redbox contends that the plaintiffs cannot assert a breach of contract claim when the statutory provision they seek to enforce, in this case the VPPA's retention provision, lacks a private right of action. *See Astra USA, Inc. v. Santa Clara County*, 131 S. Ct. 1342, 1345 (2011). As the Court noted in its previous opinion in this case, however, the Seventh Circuit has concluded that *Astra* is limited to cases where the plaintiffs seek to sue as a third-party beneficiary of a contract. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 559 n.4, 584 n.19 (7th Cir. 2012).

Regardless, because the Court has already dismissed plaintiffs' breach of contract claim to the extent it relates to unauthorized retention, the only remaining part of the claim relates to unauthorized disclosure. It is uncontested that plaintiffs have a right to sue under the VPPA for unauthorized disclosure of their personal information. 18 U.S.C. § 2710(b) & (c). Accordingly, *Astra*, even if it applies when the plaintiffs are parties to the contract under which they seek to sue, does not bar a breach of contract suit predicated on unauthorized disclosure.

## 3. Preemption

Redbox contends that the SCA preempts plaintiffs' breach of contract claims if plaintiffs' SCA damages claim survives. Because the Court has dismissed plaintiffs' SCA damages claim, it need not consider whether the SCA would preempt plaintiffs' breach of contract action.

13

### 4.     Limitations period

Redbox contends that plaintiffs' contract claim is subject to the express terms of Redbox's terms of use, which include a one-year limitations period to bring any suit. Def. Ex. A at 3.  Plaintiffs, however, allege that they never saw the terms of use while renting DVDs and that the kiosks did not display the terms of use during the time period covered by their suit.  2d Am. Compl. ¶¶ 26–27.  Accepting these facts as true, as the Court must on a motion to dismiss, plaintiffs are not bound by the limitations period in the terms of use because it is not part of the contract to which plaintiffs agreed.

Redbox contends that because there is an enforceable contract, in the terms of use, the plaintiffs cannot seek to recover under an implied contract.  *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp. 2d 913, 918 (N.D. Ill. 2003).  *DeJohn*, however, involved a very different situation.  There, the plaintiff entered a contract via the internet.  *Id.* at 915. The terms of the contract were presented as a click-wrap agreement:  a party had to acknowledge, by clicking a box on defendant's website, that "he had read, understood, and agreed to the terms of the contract in order to accept its provisions" and receive the services he wished to purchase.  *Id.* at 915–16.  Here, by contrast, plaintiffs allege that Redbox never presented the terms of use to them and that they never read or agreed to the terms.  In *DeJohn* there was no factual question, as there is here, of whether the plaintiff had agreed to the contract.

In sum, the Court dismisses plaintiffs' breach of contract claim as it relates to unauthorized retention but not as it relates to unauthorized disclosure.

### C.     Standing

Redbox contends that plaintiffs lack standing because they have not shown any

14

injury in fact from Redbox's alleged mishandling of their personal information. In its opening brief, Redbox directed this argument only against the claims related to retention. In its reply, it argues that plaintiffs lack standing for all claims.

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Plaintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 535 (7th Cir. 2011). "The injury must be to the sort of interest that the law protects when it is *wrongfully* invaded." *Aurora Loan Servs. v. Craddieth*, 442 F.3d 1018, 1024 (7th Cir. 2006) (emphasis in original).

Plaintiffs allege that Redbox disclosed their personal information without authorization and in violation of the VPPA. 2d Am. Compl. ¶¶ 59–63. They also allege that Redbox retained their information longer than authorized and in violation of the VPPA. *Id.* ¶¶ 72–74. Both of Redbox's alleged misdeeds support a contention that the plaintiffs were injured, in that their personal information was used in a way they did not authorize or contemplate. As demonstrated by the VPPA itself, the law protects personal information and privacy in some circumstances. *See* S. Rep. No. 100-599, at 2 (stating that the VPPA "follows a long line of statutes passed by Congress to extend privacy protection to records that contain information about individuals" and discussing ten other privacy statutes). A judicial decision can redress the disclosure injury by awarding damages and other relief on plaintiffs' VPPA and breach of contract claims.

As for the retention claim, Redbox notes that in *Sterk*, the Seventh Circuit stated that the injury inflicted by unauthorized retention "is enormously attenuated." *Sterk*, 672

15

F.3d at 539. Although the Court has determined that plaintiffs have no claim under which they are entitled to damages based on unauthorized retention, the Seventh Circuit stated in *Sterk* that a court may enjoin a violation of the retention provision of the VPPA and thus redress an injury resulting from violation of that provision. *Id.* at 539. The lack of recoverable damages does not eliminate standing. *Scanlan v. Eisenberg*, 669 F.3d 838, 845 (7th Cir. 2012). Plaintiffs still have an injury, even if only a highly attenuated one, if Redbox retained their personal information without authorization.

Redbox contends that even if plaintiffs have adequately alleged injury, it has raised a factual challenge to standing that requires the plaintiffs to present evidence to establish standing. When a party challenges jurisdiction with evidence, even on a motion to dismiss under Rule 12(b)(1), "the district court may properly look beyond the jurisdiction allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (proper to dismiss plaintiff for lack of standing when letter submitted by defendant showed plaintiff had assigned all of its rights to a third party). Redbox, however, has not presented any evidence that disproves the allegations in plaintiffs' complaint. Rather, it merely denies those allegations. *Cf. Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576–77 (7th Cir. 1987) (holding that district court had to resolve factual dispute surrounding applicability of jurisdictional limitations period). The Court is permitted to consider evidence submitted by Redbox disproving jurisdiction, but in the absence of such evidence the Court must continue to accept the allegations in the complaint as true. *See Apex*, 572 F.3d at 444.

16

Redbox relies on *Salmi v. D.T. Management, Inc.*, No. 02 C 2741, 2002 WL 31115581 (N.D. Ill. Sept. 23, 2002), a case in which the court found that it lacked diversity jurisdiction because the amount in controversy was less than $75,000. *Id.* at *1. That case, however, is distinguishable, because defendant had provided a police report showing that plaintiff had minimal injuries. *Id.* at *2. Redbox contends that the court broadly stated that "[d]efendant's mere challenge of jurisdiction—even without any evidence—in its Motion to Dismiss placed a burden on the Plaintiff to produce competent evidence of jurisdiction." *Id.* This statement, however, conflicts with the Seventh Circuit's more recent holding in *Apex* (a case that involved standing and not diversity jurisdiction as does *Salmi*) that it is only once evidence is offered to rebut jurisdiction that the plaintiff must present evidence to support jurisdiction. *Apex*, 572 F.3d at 444.

Redbox also argues the Court should allow only jurisdictional discovery until the question of jurisdiction is resolved. *See Lester-Washington v. Wal-Mart Stores, Inc.*, No. 11-CV-568-MJR, 2011 WL 4738529, at *2 (S.D. Ill. Oct. 7, 2011) (allowing jurisdictional discovery before resolving the issue of complete diversity); *Parkside Med. Servs. Corp. v. Lincoln West Hosp., Inc.*, No. 89 C 2233, 1989 WL 75430, *1–2 (N.D. Ill. June 20, 1989) (allowing only jurisdictional discovery until issue of complete diversity was resolved). The cases Redbox cites as authority, however, involve factual challenges to the existence of complete diversity of citizenship in diversity jurisdiction cases. In those cases, the issue of complete diversity was entirely separate from the merits and could be resolved quickly and easily by focusing discovery on the issue of the parties' citizenship. Here, by contrast, Redbox challenges standing by contending

17

that plaintiffs suffered no injury as a matter of fact. Discovery on that issue cannot readily be separated from the rest of fact discovery. The Court therefore declines Redbox's request to limit discovery.

**D.    Sufficiency of disclosure claim**

Redbox contends that plaintiffs' claims related to unauthorized disclosure should be dismissed because the complaint does not adequately allege the fact of disclosure. The Court previously held that the fact of disclosure was sufficiently alleged in an earlier version of the complaint. *Sterk v. Redbox*, No. 11 C 1729, docket no. 59 (N.D. Ill. Oct. 10, 2011) (minute entry). Redbox contends that the Court should revisit that decision in light of the fact that although the parties have engaged in some discovery, plaintiffs have not made the second amended complaint more detailed. Redbox has not, however, offered any authority for the proposition that plaintiffs were obliged to provide more detailed allegations to support a claim the Court had already ruled was sufficient. If discovery fails to turn up any unauthorized disclosures, that is a matter for summary judgment.

**E.    Certification**

Redbox contends that the Court should certify its decision on the motion to dismiss for interlocutory appeal. Certification requires that the decision "involve a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Redbox bases its argument on the fact that the retention allegations and the discovery related to them are separate from the disclosure allegations and their discovery, and thus an appeal that eliminates

18

all claims related to the retention allegations may materially advance the termination of the litigation.

The Court has, however, already dismissed the majority of plaintiffs' claims related to unauthorized retention. All that remains is plaintiffs' claim seeking injunctive relief for violation of section 2710(e) of the VPPA. On that claim, there is no controlling question of law on which there is ground for difference of opinion, because the Seventh Circuit already concluded in this case that a court has the power to enter injunctive relief to enforce section 2710(e). *Sterk*, 672 F.3d at 539. The Court therefore declines to certify the case for immediate appeal to the Seventh Circuit.

### Conclusion

For the reasons stated above, the Court grants Redbox's motion to dismiss in part and denies it in part [docket no. 114]. Specifically, the Court dismisses plaintiffs' claim for violation of the retention provision of the VPPA (Count 2), except as it relates to injunctive relief, and dismisses plaintiffs' breach of contract claim (Count 3), except as it relates to unauthorized disclosure.

s/ Matthew F. Kennelly
MATTHEW F. KENNELLY
United States District Judge

Date: July 23, 2012