IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN STERK and JIAH CHUNG, individually, and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| | ) | Case No. 11-cv-01729 |
| Plaintiffs, | ) ) | |
| | ) | The Honorable Matthew F. Kennelly |
| v. | ) ) | |
| REDBOX AUTOMATED RETAIL, LLC, a Delaware limited liability company, d/b/a Redbox, | ) ) ) ) | |
| Defendant. | ) | |

**DECLARATION OF ERIC HOERSTEN IN SUPPORT OF REDBOX'S
MOTION FOR SUMMARY JUDGMENT**

I, Eric Hoersten, declare under penalty of perjury that the following is true and correct:

1. I am the Vice President of Information Technology for Redbox Automated Retail, LLC ("Redbox"), and I have been employed by Redbox since early 2003 when I was one of the first employees of the company.

2. I have personal knowledge of the facts set forth in this Declaration, both personally and through a review of Redbox's records, made and kept in the regular course of Redbox's business by those whose regular job function it is to make and keep such records, and, if called as a witness, I could testify competently to all the facts set forth in this Declaration.

3. I am very familiar with Redbox's customer database and information technology systems ("IT Systems") as I led the team that designed and implemented those systems in the early years of Redbox's business.

4. I am aware of the requirements of the Video Privacy Protection Act, and take steps with regard to Redbox's IT Systems to ensure that Redbox's customers' personally

1

identifiable information ("PII") as defined by the VPPA is not disclosed or retained in violation of the VPPA

5. Redbox began renting DVDs to customers in 2004. Its customers do not need a subscription to rent or buy DVDs; rather they rent at their own pace and only pay a per-transaction charge. It is difficult for Redbox to predict when any particular customer will return to re-rent. Customers at times go months or even years between rentals.

6. Redbox affirmatively takes measures to comply with the VPPA and more generally to protect its customers' privacy, and is vigilant in guarding the customer information from improper disclosure. Redbox does not sell its customers' information or PII in any manner.

7. A true and accurate copy of Redbox's formal VPPA Policy is attached hereto as Exhibit 1.

**Data Retained by Redbox for Kevin Sterk and Jiah Chung.**

8. Attached hereto as Exhibit 2 is a list of the data that Redbox maintains on Plaintiffs Kevin Sterk and Jiah Chung, which is comprised of transactional data relating to their rental histories. The movie title information has been redacted in the public version of this Exhibit.

9. Exhibit 2 shows that Kevin Sterk rented a total of seven movies Redbox from February 24, 2010 to August 4, 2011, and that Sterk paid for some of these rentals with a credit card and used free promotional codes (*i.e.*, codes that allow for a free nightly rental) for others. Sterk failed to return the two movies he rented on August 4, 2011 and his credit card was charged the maximum rental charge for each movie as a result. Sterk's rentals all occurred at kiosks—he does not have a Redbox web or mobile account.

10. Exhibit 2 also shows Jiah Chung first rented from Redbox on September 12, 2008, and has rented nearly 150 times from Redbox over the years including to present, with her last rental as of June 28, 2012 being on January 12-14, 2012. Chung rents through kiosks, a web account, and also has signed up for Redbox's mobile services. She has provided her email address to Redbox.

11. Based on my review of Redbox's IT Systems and customer database, and as further discussed below, there is no record of either Kevin Sterk or Jiah Chung's PII being disclosed to anyone. A copy of the data relating to these two individuals that has been shared with vendors in the ordinary course of business has been produced by Redbox in the course of this litigation as bates labels A00998 to A01246 and A01300 to A01302. Exhibit 3 hereto provides a listing of the data feeds by range and vendor, which was marked as Exhibit 14 to my Deposition on June 14, 2012.

**Redbox's Vendors**

12. Redbox uses a handful of vendors to perform certain back-office functions in the ordinary course of its business, such as providing customer call center services, generating rental receipts that are emailed to customers at their request, sending marketing information to Redbox consumers and using anonymized customer rental information for internal purposes. When Redbox engages vendors to perform back office ordinary course of business functions, Redbox has chosen vendors with strong industry experience and excellent reputations for compliance. Redbox's agreements with US vendors also contain confidentiality provisions requiring Redbox's US vendors to protect all data or information provided to them, including Redbox's customer information.

13. The vendors listed below are the only vendors that receive any sort of customer-related information, with the exception of credit card processing companies, who receive credit card information as part of the billing process, but do not receive movie transaction information. Redbox does not disclose customer information to any other vendors, and does not disclose customer information to any third-parties. Redbox's parent company is Coinstar, Inc. ("Coinstar"). Coinstar does not have access to PII of Redbox's customers, and Redbox does not disclose PII to Coinstar.

A. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

14. ▬▬ is a vendor that provides marketing analytics services to Redbox in the ordinary course of Redbox's business. ▬▬ does not receive PII from Redbox. The information that is shared with ▬▬ is anonymized such that ▬▬ cannot determine what person or customer rented any particular movie. Instead, the transactional information is linked by a random customer ID number or account number that is generated by Redbox and cannot be linked back to a customer except by Redbox. As the data feeds for Plaintiffs Jiah Chung and Kevin Sterk demonstrate, ▬▬ does not have information such as their name or email address and, therefore, cannot determine what movies any specific person rented.

B. ▬▬▬▬▬▬

15. Similar to ▬▬, ▬▬▬▬▬▬ is a vendor that provides analytics services to Redbox in the ordinary course of Redbox's business. These services allow Redbox to query customer behavior. ▬▬▬▬▬▬ does not receive PII from Redbox. As with ▬▬, the customer rental information sent to ▬▬▬▬▬▬ is anonymized such that it is impossible to determine what movie any particular individual rented. The method of anonymization is similar to ▬▬ in that Redbox uses customer ID numbers or account numbers to link movie rental

4

history to a particular number (that cannot be tracked to a name or email by ▮▮▮ because ▮▮▮ does not have any names or email addresses). As the data feeds for Plaintiffs Jiah Chung and Kevin Sterk demonstrate, ▮▮▮ does not have information such as their name or email address and, therefore, could not possibly determine what movies they rented.

C. ▮▮▮

16. ▮▮▮ provides two services to Redbox in the ordinary course of Redbox's business. The first is marketing email services, which includes emails that are sent to most customers on Tuesday announcing general new releases, and more targeted Friday emails that are sent to certain customers. Certain limited customer information is shared with ▮▮▮ for this purpose, including the email address of those customers for whom Redbox has an email address, and the customer's name is shared for those customers who have a web account. Approximately ▮▮ of Redbox's customers have web accounts, including Jiah Chung but not including Kevin Sterk. Redbox does not share the movie titles rented by any particular customer with ▮▮▮ and therefore ▮▮▮ does not have PII. As discussed below in the ▮▮▮ section, because Redbox does not have any of Kevin Sterk's email addresses his information would not have been sent to ▮▮▮.

17. ▮▮▮ also provides a "▮▮▮" service to Redbox, which is a service that helps Redbox track promotion code redemptions. No movie rental information is shared at all and, therefore, no PII is shared. Some customer information is shared such as email address and names to link the promotion code. Sterk's information was never sent to ▮▮▮, however, Jiah Chung's email address was sent based upon several promotion codes she entered.

5

**D.** ███████████████.

18. Like ███████████, ██████ is a vendor that facilitates Redbox's referral program (providing promotional credit for future movie rentals to customers who refer a friend to Redbox that results in a rental) in the ordinary course of Redbox's business. No movie rental information is shared with ██████ and, therefore, no PII. Only certain limited customer information, such as names and email addresses, are sent to ██████ in order to enable it to match the referrals and provide credits.

**E.** ███████████.

19. The ██████████ program tracks web transactions in the ordinary course of Redbox's business to determine if rentals through Redbox's website are new customers or repeat customers. This is important because customers often affirmatively request that the website remember their account so they do not need to log-in on future visits. No customer specific information is shared with ████████; rather, Redbox gets a list from ████████ of transactions and then provides to ████████ responsive information as to whether those transactions were initiated by a ████████████████████████████████████████████████████████ Thus, no customer information or movie rental history information is shared with ████████, and there is no PII shared.

**F.** ██████████.

20. ██████████ is the vendor that generates rental receipts (if requested by the consumer) in the ordinary course of Redbox's business when a movie is rented from a kiosk. During each rental transaction, the customer is asked whether they want a rental receipt for that specific transaction. Information is provided to ██████████ only when the customer affirmatively chooses to receive such a receipt, and a customer may change that selection for

6

each rental transaction. The current kiosk display states "Please enter your email address if you'd like to receive receipts and promotions." During each transaction, a customer can choose to opt-out of receiving any receipt by simply clicking a "no thanks" button; by not providing an email address; or simply bypassing that screen without entering an email address. The transaction receipt is part of the ordinary course of the rental transaction to process the request of the customer. A copy of the current kiosk screen display for this part of the transaction process is attached hereto as Exhibit 4.

21. Given the nature of the email transaction receipt, ████████, by definition, has the movie rental information (because it is sending the transactional receipt for that movie), and the specific email address that the customer provided for that transaction. Redbox does not provide the name or any other information about that customer.

22. With regard to Chung, Redbox's records indicate that she affirmatively provided her email to Redbox and requested an email transaction receipt for her rentals. As discussed below, her request is processed through ████████ who generates those email receipts in the ordinary course of Redbox's business using the information provided by the customer during that rental transaction. Redbox does not provide any additional information to ████████, including the name of the customer.

23. With regard to Kevin Sterk, our records indicated an individual by that name affirmatively provided a hotmail.com email address and requested email transaction receipts. However, I have been informed that Plaintiffs' counsel has confirmed that the Kevin Sterk with the hotmail.com email address is not Plaintiff Kevin Sterk and therefore this data and information does not relate to Plaintiff Sterk. I have confirmed, based on a list of emails provided by Plaintiffs' counsel, that Redbox has no record of Plaintiff Kevin Sterk providing any

7

of his multiple email addresses to Redbox. Therefore, no information regarding Plaintiff Sterk's movie rental transactions was provided to █████████.

**G.** █████.

24. In addition to the above vendors, Redbox uses ████████████████ ("█████" or the "Customer Service Vendor") to perform certain customer service related functions, including providing call center support for customers. Redbox began using ██████ in February 2010.

25. █████'s representatives have the ability to access a customer's PII from Redbox's servers upon the request of that customer in order to process and respond to that consumer's service related request or inquiry. However, the opening welcome screen on █████'s customer service software that allows access to Redbox's customer database includes a prominent section on the VPPA. In addition to being trained on the VPPA and VPPA compliance, ██████ customer service representatives follow a VPPA-protocol process to confirm the customer's identity before sharing any such information with the customer. A true and accurate copy of that welcome screen is attached hereto as Exhibit 5. To the extent that such activity involves a disclosure of PII, which it would not always include, that disclosure would be at the request of the consumer and also within the ordinary course of business exception of the VPPA, including to provide request processing.

26. Redbox has no record of either Jiah Chung or Kevin Sterk having contacted █████-based customer support representatives. Any interaction in which a particular customer's movie rental is accessed results in a log that would be retained in Redbox's records, but no such records exist for Sterk or Chung. Jiah Chung did, however, contact online chat support a few days before she joined this lawsuit. A true and accurate copy of that chatlog session (with movie

8

information redacted in the public version of this Exhibit) is attached hereto as Exhibit 6. That chatlog session took place between Jiah Chung and a Redbox employee named Tyler. All internet-based customer service support is provided by internal Redbox employees, and not ■■■■ customer service representatives.

**Purposes For Which Redbox Collects PII**

27. The purposes for which Redbox collects and uses PII include: (1) allowing customers to participate in features Redbox offers or providing related customer service, including, without limitation, responding to customer questions, complaints or comments ("Category 1"); (2) tailoring content recommendations and offers Redbox displays to that customer ("Category 2"); (3) processing a rental or other transaction that a customer initiates ("Category 3"); (4) providing that customer with information, products or services that they have requested or that Redbox thinks may interest that customer ("Category 4"); and (5) improving the Redbox kiosks, website, and other systems, or Redbox's services and for other internal business purposes ("Category 5").

28. Non-exclusive specific examples of the uses in Category 1 include:

   A. To respond to the myriad requests that customers have when they contact Redbox's customer service, including for billing questions, to ask about prior movie rentals, to address issues regarding the return or playability of a specific movie or disk rental, and the many other reasons addressed in the customer service materials produced in this litigation;

   B. To inform customers about new offerings that may be of interest to the customer based on their past transaction history; and

   C. To provide credits or otherwise complete and fulfill promotional opportunities that customers may chose to participate in, such as the refer-a-friend program.

29. Non-exclusive specific examples of the uses in Category 2 include:

   A. To tailor recommendations to a specific customer at the kiosk and on Redbox's website;

9

      B.     To tailor recommendations to a specific customer through email offers or promotions; and

      C.     To determine what videos to place in particular kiosks or markets.

30.    Non-exclusive specific examples of the uses in Category 3 include:

      A.     In order to vend the specific title that the customer requested;

      B.     To send email rental and return receipts and other transactional receipts (if requested by the customer);

      C.     To verify billing and other transactional issues, including related regulatory or statutory obligations such as those relating to taxing authorities;

      D.     To verify rental returns;

      E.     For any related customer service related inquiries or requests; and

      F.     *See also* Category 1.

31.    Non-exclusive specific examples of the uses in Category 4 include:

      A.     To send emails or other marketing messages and communications to the customer recommending other titles that may be of interest to that customer;

      B.     To provide promotions or marketing materials to the customer relating to other products or services that Redbox believes may be of interest to that customer;

      C.     To provide recommendations to the customer on Redbox's kiosks and website;

      D.     To provide a customer's rental history to that customer upon his or her request;

      E.     To provide a customer's rental history to that customer via the customer's online Redbox account; and

      F.     *See also* Category 2.

32.    Category 5 includes many of those examples set forth in other categories above, and also retention of transactional information for tax purposes, accounting purposes, pursuant to agreements with credit card processing companies, for legal purposes, such as defending from

suit or claims that credit card charges were not appropriate.  Additionally, this category includes, but is not limited to:

    A.    To determine where to place new kiosks;

    B.    To determine what new releases to feature in various markets;

    C.    To send more directed and specific emails to customers;

    D.    To improve marketing and advertising efforts more generally;

    E.    To determine where to allocate marketing and advertising efforts and spending;

    F.    To improve the customer experience, including development of improved functionality of Redbox's kiosks, website, and email marketing to enhance the customer experience, such as through a kiosk-based recommendation system;

    G.    For fraud detection and prevention;

    H.    For billing and collection purposes, including to demonstrate the validity of any credit card charges for each rental transaction to the extent such a charge is challenged by the card holder;

    I.    To comply with any relevant statutes or regulations;

    J.    For future developments, including technological advancements with Redbox's business and services; and

    K.    For other legally required purposes, including responding to governmental requests for information or based on litigation holds due to the filing of litigation, including putative class actions such as this matter.

33.    As an example of how Redbox currently uses its customers' PII, I am informed that Redbox sent Plaintiff Chung an email on February 11, 2012 that recommended "Breaking Dawn," the latest movie in the "Twilight" series.  This was based, in part, on an analysis of the over 150 movies that Jiah Chung previously rented from Redbox, including her prior rental of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  A true and accurate copy of the February 11, 2012 e-mail Ms. Chung has received from Redbox is attached as Exhibit 7.

11

**Redbox's Policy to Delete PII Upon Request.**

34. The Privacy Policy in force during Plaintiffs' first rentals in 2010 stated:

> Access
>
> You are in control of any personal information you provide to us on-line. If at any time you would like to correct the personal information we have about you, or if you would like to change your preferences for contacts from us or on behalf of our business partners, you can let us know by contacting us at the email or postal address listed below.
>
> In order to review any personal information we have about you or ask us to delete that information or stop further use of the information, please email us at questions@redbox.com.

A copy of that Privacy Policy is attached hereto as Exhibit 8. As noted in the opening line, Redbox's policy is to put customers in control of their personal information.

35. It has always been and continues to be Redbox's policy to execute a customer's request to delete his or her PII. If a request was made by a customer to delete his or her PII, Redbox is ready, willing, and able to do so, consistent with its policy.

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: Apr 1, 2013

_____
Eric Hoersten